the subject of the defendant's being a bona fide club, and as such
entitled to the protection of the exception contained in section 31
of the liquor tax law. It was injected into the case by the inquiry
which came from the jury; and in the charge of the court, and the
colloquy which ensued between court, counsel, and jury in answer
to these questions, it is evident that the question, at least so far as
the jury was concerned, submitted in the body of the charge, was
quite lost sight of, and the jury were permitted to determine the
issues upon the consideration as to whether or not the defendant
was a bona fide club. The defendant pleaded that it was such, but
the proof given upon the trial demonstrated that it was a mere dance
hall, and therefore entitled to no benefit as a club. The requests
to charge upon this subject made by counsel for the plaintiff were
entirely proper, and should have been granted, and the jury should
have been instructed that there was no evidence upon which they
could found a verdict exempting the defendants from liability based
upon the defendant being a bona fide club. It is quite evident from
the charge that the jury may well have thought that, if the defend-
ant took out a license as a club, it had the right to make the sales
which it did make. The submission of this question to the jury,
therefore, was erroneous.

It follows from these views that the judgment and order should
be reversed, and a new trial granted, with costs to the appellant to
abide the event. All concur.

---

(65 App. Div. 149 )

AYERS v. WESTERN UNION TEL. CO.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. TELEGRAPHS — DELAY IN TRANSMISSION OF MESSAGE—QUESTION FOR JURY.
      In an action against a telegraph company for damages for delay in
   the transmission of a message, it is for the court to determine whether
   the delay was such that negligence could properly be inferred by the
   jury.

2. SAME—NEGLIGENCE—EVIDENCE.
      A delay of five hours in the transmission of a telegram from an office
   located in a country district in one state to an office located in a country
   district in another, on Sunday, when telegraph offices are closed for a
   part of the day, is not of itself evidence of negligence on the part of the
   company.

3. SAME—LIMITATION OF LIABILITY—VALIDITY.
      Where plaintiff gave a telegraph message to one of the company's
   messengers, who had just delivered a message to plaintiff, it not appear-
   ing that the messenger was authorized to receive messages, a stipulation
   on the company's blank on which plaintiff wrote his message to the
   effect that the messenger, in receiving messages, was agent of the
   sender, and that no responsibility should attach to the company until
   the message was presented at its office, was binding on plaintiff.

Appeal from trial term, New York county.

Action by Edward A. Ayers against the Western Union Telegraph
Company. From a judgment in favor of plaintiff, and from an order
denying a motion to set aside the verdict and for a new trial, defend-
ant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTER-SON, INGRAHAM, and LAUGHLIN, JJ.

Rush Taggart, for appellant.
John Quinn, for respondent.

INGRAHAM, J.   The action is brought to recover for the damages sustained by the plaintiff by reason of the failure of the defendant to deliver a telegram sent by the plaintiff from Monmouth Beach, N. J., to Far Rockaway, N. Y.   The complaint alleges that a messenger of the defendant delivered to the plaintiff at his residence at Monmouth Beach a telegram from Far Rockaway, asking the plaintiff, who was a physician and surgeon, if he would perform a surgical operation upon the sender of the telegram, at Far Rockaway, on the following Wednesday, and requesting an immediate reply; that this telegram was received by the plaintiff at 27 minutes past 11 o'clock on Sunday morning, July 29, 1900; that thereupon the plaintiff wrote out and addressed a reply thereto, stating that he would perform the said operation at Far Rockaway, and immediately delivered the said reply to the defendant's messenger, and the defendant undertook to transmit the same immediately or with all reasonable dispatch to the person to whom the same was addressed, and that the plaintiff thereafter paid to the defendant's agent the regular rate for the transmission of said message; that the said message addressed as aforesaid was not transmitted from the said office of the defendant immediately or within a reasonable time after the delivery thereof to the defendant's agent or messenger, but that the defendant and its servants or agents failed and omitted to transmit the same until the hour of 5 p. m. on said date; that said message was not delivered to the person to whom the same was addressed until long after said hour on said date; and that, by reason of the failure of the defendant or its servants or agents to transmit and deliver the aforesaid message until long after 5 o'clock on said day, the plaintiff was deprived of his employment to perform the aforesaid operation, and of subsequent medical advice and attendance upon the patient, and has suffered damages in the sum of $650.   The defendant in its answer admits that a certain message was delivered to the plaintiff some time in the forenoon of July 29, 1900, at Monmouth Beach, N. J., and that the plaintiff addressed a message in reply thereto, but alleges that "the said message was immediately transmitted by the defendant so soon as the same was received by it," and denies that the defendant undertook to transmit the same immediately after its delivery to the messenger named in the complaint.   And as a further defense the defendant alleges that the said message was written upon one of the defendant's message blanks, upon the first page of which, immediately over the message as written by the plaintiff, were plainly printed the words, "Send the following message subject to the terms on back hereof, which are hereby agreed to."   The terms appearing upon the back of the message included the following:

"It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message,

beyond the amount received for sending the same.  \*  \*  \*  No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices, and, if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender."

Upon the trial the plaintiff testified that he was a physician and surgeon; that on the 29th of July, 1900, he received a telegram from a Mrs. Brinckerhoff at about 11:20 a. m. That telegram was produced. It was directed to the plaintiff, and asked him whether he could perform an operation at Far Rockaway on Wednesday or Thursday following, and requested the plaintiff to answer immediately. After receiving the message from the telegraph messenger, the plaintiff wrote a reply, and delivered it to the messenger who brought the telegram. That reply stated that the plaintiff would go on Wednesday. Upon cross-examination the plaintiff testified that it was about five minutes' walk from his residence, where the telegram was delivered, to the telegraph office; that the telegraph office at Monmouth Beach was open until 12 o'clock on Sunday, and was opened again at 5 o'clock; that the receipt book of the company stated that the message was received by the plaintiff at 11:27 a. m., and that the messenger boy left the house with the answer not more than five or six minutes thereafter. Mr. Brinckerhoff, the husband of the sender of the message, testified that he lived at Far Rockaway, Long Island; that he sent the message to the plaintiff from Far Rockaway to Monmouth Beach; that he sent the message early in the morning, about breakfast time, and took it to the office of the defendant at the station at Far Rockaway; that he waited for a reply to that telegram until about 3 or 4 o'clock in the afternoon, and then telegraphed for another physician; and that he received the answer from the plaintiff about an hour after he sent the other telegram. There was no evidence as to the time ordinarily required for the transmission of a telegram from Monmouth Beach to Far Rockaway, of the distance from Mr. Brinckerhoff's house to the telegraph office at Far Rockaway, or of the time when the office at Far Rockaway was open for the transaction of business. We have the fact that it took from about breakfast time in the morning until 11:27 for a telegram to reach Monmouth Beach from Far Rockaway; that the plaintiff delivered the answer to the messenger at Monmouth Beach, to be transmitted to Far Rockaway, some time after 11:27 on the morning of July 29th; and that the telegram was received at Far Rockaway between 4 and 5 o'clock in the afternoon of the same day. There is no evidence to show the time that the defendant's office was open at Far Rockaway, the time that the telegram was received at that office, the distance of the residence of the person to whom the telegram was sent at Far Rockaway from the defendant's office, or any other condition or circumstance which would enable the jury to judge as to what would be a reasonable time for the transmission and delivery of such a message. The complaint alleges that the message was not transmitted from the office of the defendant immediately or within a reasonable time after the delivery thereof to the defendant's agent or messenger, which was denied by the answer, but there was no evidence to prove that fact.

The court submitted to the jury two questions of fact. The first was whether the delay in the delivery of this message to Mr. Brinck-erhoff at Far Rockaway "was a gross, improper, and unreasonable delay,—the delay from the receipt of the message at Monmouth Beach at half past eleven to five o'clock, when the answer was received at Far Rockaway, on a Sunday. Was it a case of gross negligence on the part of the company?" The second question was whether the phrase in the stipulation upon the back of the telegraph blank was or was not an unreasonable one, "under the circumstances of this case." The defendant had moved to dismiss the complaint on the ground that no negligence had been shown on the part of the defendant in any way, which motion was denied, and to which the defendant excepted. The defendant also asked the court to charge, as a matter of law, that the stipulation on the blank referred to was a reasonable one. The court declined so to charge, and the defendant excepted. The defendant also excepted to the submission of each of these questions to the jury, and to the charge given upon each of these questions.

Upon the first point, I do not think that the testimony is sufficient to show negligence on the part of the defendant in the transmission of this message. It is undoubtedly the law that a delay in delivering a message may be evidence of gross negligence, but the question must always be first determined by the court whether the delay was so great that negligence could properly be inferred; and that must necessarily depend to a large extent upon the distance of the stations apart, the nature of the business transacted at both the sending and receiving station, and the location of the residence of the person to whom the dispatch was to be delivered. In none of the cases to which our attention has been called has it been held that the delay of about five hours in the transmission of a telegram from an office located in a country district in one state to an office located in a country district in another state, especially on a Sunday, when telegraph offices, as well as the offices of other persons and corporations engaged in the transaction of business, are necessarily closed for a portion of the day, has been of itself held to be evidence of gross negligence. The principal case relied on by the plaintiff is Pearsall v. Telegraph Co., 124 N. Y. 256, 26 N. E. 534, 21 Am. St. Rep. 662. In that case a telegram was sent from a place on Long Island on July 31st, at about 8 o'clock in the morning, to a firm of brokers in the city of New York. The telegram was sent to T. W. Pearsall & Co., but when it was received in New York the words "& Co." were left off, and it was received in the office of T. W. Pearsall & Co. before 10 o'clock in the morning. It was thus received within two hours from the time it was sent, and there was therefore no delay in the transmission of the message; the mistake of the company being in directing it to "T. W. Pearsall," instead of to "T. W. Pearsall & Co.," and it was for this mistake in the address of the message that the company was held liable. The fact that the telegram was delivered with a different direction than that with which it was sent made out a prima facie case of negligence against the defendant. This was not, therefore, a case of neglect to deliver

the message, but one where the message as delivered was substantially different from the message as received, and in consequence of such difference the message was not given to the person to whom it should have been delivered had the correct address been transmitted by the telegraph company. It is a general rule that telegraph companies are not under the obligation of common carriers, that they do not insure the absolute and actual transmission of messages delivered to them, and that they have the right to make reasonable regulations for the transaction of business, and to protect themselves against liabilities which they would otherwise incur through the carelessness of their numerous agents, and the mistakes and defaults incident to the transaction of their peculiar business. Kiley v. Telegraph Co., 109 N. Y. 236, 16 N. E. 75. Upon the original message written by the plaintiff, and which was produced by the telegraph company, was an indorsement, "Time filed, 4:25 p. m." But there is no evidence as to the person who made that indorsement, that it was made by one of the defendant's agents, or that it indicated the time when the message was received at the office of the defendant. It might well have been the time that the message was filed away after having been sent.

I also think that the regulation upon the back of this telegram, by which the sender agreed that the messenger to whom he delivered the answer at Monmouth Beach should be considered as his agent, and not the agent of the company, in delivering the message to the operator of the defendant, was, under the circumstances of this case, a reasonable regulation for the transaction of the defendant's business. The messenger who delivered the telegram to the plaintiff, to which the one in question was an answer, was, so far as appears, an employé authorized to deliver telegrams, and not to receive them. There is nothing to show that this messenger of the company had any authority from the defendant to receive telegrams to be transmitted by the company,—nothing to show that it was the custom of the company to allow its messengers to receive telegrams. There was no payment made to this messenger by the plaintiff. The message was written upon one of the blanks of the company, which had upon it plainly the statement that the telegram was sent subject to the conditions indorsed upon its back, which conditions were agreed to by the sender of the message. In the absence of evidence to the contrary, he must be assumed to have been familiar with the terms upon the back of the message, and the request to send the message was subject to the conditions which were agreed to by the sender. Those terms and conditions were that no responsibility regarding the message should attach to the company until the same was presented and accepted at one of the defendant's transmitting offices. These messengers were employed to deliver messages only. If the messenger was sent with several messages to deliver in a country district, where residences are at a distance from each other, and the delivery of which would require some time before the messenger could return to the company's transmitting office, it would be unreasonable to charge the company with gross negligence if the messenger did not return to the office at once. Indeed, others to whom

messages were addressed could complain if their messages were delayed because the messenger employed to deliver messages was required to carry answers back to the telegraph office. If the plaintiff had wished to insure the immediate transmission of his message, he could have taken it himself to the transmitting office; but, with knowledge of this regulation, which he agreed to, if he trusted the message to the messenger who had delivered to him a telegram, the company would not be responsible for its transmission until it was actually received at the transmitting office. This certainly was not, under the circumstances, an unreasonable regulation, within the principles established in Kiley v. Telegraph Co., supra, for, as was there said:

"They have the right to make reasonable regulations for the transaction of their business, and to protect themselves against liabilities which they would otherwise incur through the carelessness of their numerous agents, and the mistakes and defaults incident to the transaction of their peculiar business."

The case of Will v. Cable Co., 3 App. Div. 22, 37 N. Y. Supp. 933, presented a different question. There the messenger was constituted an agent of the company to receive the answer by the defendant's manager. The answer was obtained by the messenger, and retained by him without delivery to the transmitting agent until the following day. The company having constituted the messenger boy its agent to bring this particular message back to its office, it was held that such a regulation was unreasonable in that particular case.

It is not necessary to determine the question as to the measure of damages, as we do not think that, upon the facts disclosed at the trial, the plaintiff was entitled to recover.

The order appealed from must therefore be reversed, and the motions to set aside the verdict and for a new trial granted, with costs to appellant to abide event. All concur.