## NEW ENGLAND AND SAVANNAH STEAMSHIP COMPANY *v.* PAIGE.

A special written contract was entered into between a steamship company and the shipper of a horse over its line, whereby it was agreed by the company that it should furnish room on the steamship for the horse and supply it with water on the passage, and by the shipper that the company should be in no manner liable for any accident that should happen to the horse on board ship by reason of the perils of the sea, sickness, disease, or any other unavoidable cause whatever, and further that he would at his own expense provide stalls and food during the voyage and proper grooms to take sole charge of the horse. During the voyage and between ports the ship encountered a violent hurricane, and by reason of the rolling and pitching of the ship the horse was thrown from his stall and killed. No negligence on the part of the servants of the company was shown, the death of the horse appearing to have resulted from the violence of the storm or from the failure to provide grooms and a proper stall. *Held*, that the company is not liable for the death of the horse.

Argued June 2,—Decided July·22, 1899.

Action for damages. Before Judge Norwood. City court of Savannah. January 13, 1899.

*Lawton & Cunningham*, for plaintiff in error.
*George W. Owens*, contra.

SIMMONS, C. J. The facts of this case are sufficiently indicated in the headnote and the following discussion. Under them we think that the plaintiff in the court below was not entitled to recover from the steamship company. The only things which the company agreed to do were to furnish deck room for the horse, supply it with water, and transport it from Boston, Mass., to Savannah, Ga. The owner agreed that the company should not be liable for any accident or injury resulting to the animal from the perils of the sea, and that he would furnish the stall and proper grooms to accompany the horse and take *sole* charge of it. He failed to send any groom to take charge of the horse, and also failed, according to his own testimony, to furnish a proper stall. A violent hurricane came upon the ship shortly after she left Boston, and lasted nearly twenty-four hours. It was so violent that at times the ship "rolled to an angle of forty-five degrees." The horse appears to have been safe at four o'clock on the morning of the

second day of the storm.    Between that hour and six o'clock of the same morning the storm seems to have increased in fury, the vessel rolling and pitching so that no one, not even the servants of the company, could stand unsupported on deck. During this period the horse was thrown from the stall and killed.    The evidence shows that the horse was in the stall and in apparently good condition at four in the morning, and that at six it was found dead a considerable distance from the stall.

It was argued here, in behalf of the defendant in error, that the stall was not properly fastened in its place, but the evidence is uncontradicted that after the storm an inspection showed that the stall had not been moved from where first placed.    It was also argued that, as the four sides of the stall were quite low, the company's servants should, when they saw that a storm was making up, have used ropes to raise or build up the sides, or passed ropes over the horse's back, or used some other means of securing the animal, that it could not be thrown out of the stall.    It does not clearly appear that any such scheme was practicable, but, even if it had been, we think that under its contract the company was under no duty to strengthen or improve the stall.    The shipper agreed to furnish the stall, and saw the stall before the vessel left Boston.    If it was not high enough, the fault was his, for it was his duty to furnish a proper stall. Certainly it was not the duty of the company, under this contract, to use ropes or other means to build up the stall after it had been furnished by the shipper and placed upon the vessel.    Thus if the injury to the horse resulted from the insufficiency of the stall, it was attributable to the fault of the shipper.    Had he complied with his contract to send proper grooms to take charge of the animal, they might have been able, by means of ropes and other appliances, to prevent the injury.    Inasmuch as the owner did not furnish any groom, he can not rightfully claim that it was negligence on the part of the company not to have done what he had himself agreed to furnish grooms to do.    This contract meant more than the learned trial judge instructed the jury it meant.    In our opinion it does not mean simply that the shipper should furnish grooms to feed and water the horse and keep the stall clean,

but that they were to do these things and look after the safety of the horse as well. Had the horse become sick upon the voyage, it would not have been the legal duty of the company, under its contract, to have attended it, though in the absence of grooms it would have been a matter of humanity to do so. If it was no part of the company's legal duty to do this, it can not be claimed that it was its duty to station men at the horse's stall during a violent storm, to keep the animal quiet and to keep it from being ejected from the stall by the violent rolling and pitching of the ship. As well might a passenger complain if, by reason of the rolling of the ship to an angle of forty-five degrees, he had been thrown from his berth and injured. Taking together the special contract of affreightment and the evidence adduced on the trial of the case, we can not see that there was any negligence on the part of the company or its servants which would have rendered the company liable for the killing of the horse. According to the evidence, its death was caused by an unavoidable accident or by the act of God, unmixed with any negligence on the part of the company. If any negligence at all was shown to have contributed in any way to the injury, it was negligence on the part of the shipper and not of the company.

. Several rulings and charges are complained of in the motion for new trial, but the view we take of the case renders it unnecessary to discuss them. Our opinion, after a careful reading and study of the evidence, is that the plaintiff in the court below was not entitled to recover, and that the court erred in refusing to grant a new trial upon this ground.

*Judgment reversed. All the Justices concurring.*