## 463, 464. CARTER & COMPANY *v.* SOUTHERN RAILWAY COMPANY, and *vice versa.*

1. The refusal of the court to enter judgment by default against the plaintiff, for failure to produce documents required by notice served on behalf of the defendant, was not an abuse of discretion.
2. A contract of carriage, though made in a foreign State, is not necessarily governed, in matters of construction and effect, by the laws of

that State, where the contract is to be partly performed in this State; this is especially true as to requirements which are to be wholly per-formed in this State.

3. A pass entitling a shipper to transportation without payment of fare is a good consideration to support a special contract made by him with the carrier, limiting the latter's common-law liability.

4. If a carrier relies upon a special contract to vary his common-law liability, the burden is on him to show that any damage which oc-curred was within the exception, and also that it was not occasioned by his negligence.

5. Where a contract of shipment requires the owner or shipper to give notice in writing of any damage to the shipment before it is unloaded, such stipulation may be waived. If the carrier's agent without objec-tion to the form of the notice receives and acts upon an oral notice, a waiver of the requirement as to its being in writing results.

6. The court erred in directing a verdict.

Action for damages, from city court of Baxley—Judge Thomas. March 30, 1907.

Argued October 14,—Decided November 14, 1907.

*V. E. Padgett,* for plaintiffs.

*DeLacy & Bishop, Parker & Moore,* for defendant.

RUSSELL, J.   This case is before us on a main bill and a cross-bill of exceptions.   J. H. Carter & Company brought an action against the Southern Railway Company, for damages to live stock while in transit.   After all of the evidence had been submitted, the court, upon motion of defendant's counsel, directed a verdict in favor of the defendant.   The plaintiffs moved for a new trial, and now except to the refusal of that motion.   The defendant, having properly filed its exceptions pendente lite, excepts, by cross-bill, to the refusal of the court to grant an order peremptorily re-quiring the plaintiffs or their attorney to produce in court, to be used as evidence by the defendant, certain contracts between the parties, and assigns error upon the refusal of the court to grant a judgment as by default, in favor of the defendant, upon the failure of plaintiffs and their attorney to produce said contract. If the defendant's contention as set forth in the cross-bill is well taken, it will be determinative of the whole case; and for that rea-son we will first pass upon the cross-bill.

It appears, from the record, that at the June term, 1906, of the city court of Baxley, the present case being then on trial, and a part of the evidence having been introduced, it was brought to

the attention of the court that V. E. Padgett, Esq., plaintiffs' attorney, had in his possession, and in court, certain live-stock contracts relating to the shipment which was the basis of the suit, to-wit, a special live-stock contract executed at Ft. Worth, Texas, February 10, 1906, between the Missouri, Kansas & Texas Railway Company and the Ft. Worth Horse & Mule Company, shippers, for the shipment of one car of thirty horses to J. H. Carter & Company, Baxley, Georgia, upon certain terms and conditions in said contract set forth; also a live-stock contract executed at Shreveport, February 13, 1906, between the Vicksburg, Shreveport and Pacific Railway and J. H. Carter & Company, shippers, for the shipment of one car said to contain thirty horses, from Shreveport to Vicksburg, consigned to J. H. Carter & Company, Baxley, Georgia; also a live-stock contract executed at Vicksburg, February 14, 1906, between the Vicksburg, Shreveport & Pacific Railway and J. H. Carter & Company, shippers, for transportation of one car said to contain thirty head of horses, from Vicksburg to Meridian, consigned to J. H. Carter & Company at Baxley, Georgia. Upon the admission of plaintiffs' attorney that he had the said contracts in court, and upon his refusal to produce the same upon the verbal request of defendant's attorney, for the purpose of being used in evidence, the court required the attorney for plaintiffs to produce said contracts instanter, and they were so produced, upon the oral motion of defendant's attorney, who stated in his place that they were material to the issue. Defendant then tendered the contracts in evidence. Plaintiffs' counsel objected to the admission of the contracts in evidence, upon the ground that they were not authorized by the pleadings; whereupon the defendant amended its plea and set up said contracts. The trial of the case was at this point arrested, and the case was withdrawn from the jury and continued, upon plaintiffs' motion. The contracts were returned to plaintiffs' attorney and were left in his custody. A few days thereafter the defendant's attorney gave the plaintiffs notice in writing to produce said contracts at the next succeeding term of court, and thereafter until the final disposition of the case; which notice was served upon the attorney for the plaintiffs on June 11, 1906. At the August term, 1906, the defendant's attorney called for a response to the notice to produce, and both an oral and a written response thereto were made.

The three persons composing the partnership of J. H. Carter & Company each testified that the papers in question were not in their custody, and that they knew nothing of them. Mr. Padgett, the attorney for the plaintiffs, stated that he considered the contracts not material to the contentions in the case, and that he had turned them over to his stenographer, who had destroyed them. He further testified: "When the court forced me to produce these papers at a former trial, I understood that he had no power to do so if I had not had them in the court-room. And I made up my mind then, as I was being treated unfairly, if I ever got hold of them again that I would destroy them, and that the defendant should never get them in its possession again. They were destroyed in my office, not without my consent. I will say further, that at the trial Mr. Luke White swore that these papers were not contracts under which this stock was shipped, but were given him as a mere pass to come there on, and therefore I did not think them material to the case, so had them destroyed."

The written response of the plaintiffs to the notice to produce was as follows: "Now come the plaintiffs in answer to a motion to produce, served upon them, and attach the shipping contract or bill of lading called for in the first paragraph of said motion. Further answering said notice, the plaintiffs say that the other two instruments therein mentioned and described are not in their possession, power, custody, or control, and plaintiffs further say that there was no such valid contract as referred to therein, and if such was in existence it is not now in their power, custody or control. . . Nor have they been since the service of said notice." On the hearing had on the notice to produce and the answer thereto, the defendant's attorney stated in his place, that the papers called for, and which were not produced, were not in the custody, power, or control of the defendant, or of defendant's attorney, but they are now or have been in the power, possession, custody, or control of the plaintiffs or their attorney, and that they are material to the case; and moved the court for a judgment in favor of the defendant as by default.

Upon this oral motion being overruled, and after the court had required the verbal response to the notice to produce, to which we have referred before, the defendant, by its attorneys, filed a written motion for a peremptory order requiring the plaintiffs or their

attorney to produce instanter the contracts executed at Shreveport and Vicksburg respectively, to be used as evidence by the defendant in said case; and upon a refusal or failure to so produce the same in response to said order, defendant moved the court to enter a judgment as by default against the plaintiffs and in favor of the defendant. The refusal of the court to grant this motion is the ruling to which exception is taken by the cross-bill of exceptions. We might think that the court erred in refusing the peremptory order requiring the production of the contracts, under the circumstances disclosed by the record, and yet we might not be prepared to reverse a judgment either granting or refusing such a peremptory order. An important exercise of discretion on the part of the trial judge is necessary, and it is only when this discretion is abused that it should be controlled by the reviewing court. Of course, as we have already ruled in *Central Ry. Co.* v. *Lewis,* 2 *Ga. App.* 428 (58 S. E. 674), the court could not order a judgment by default until there had been a peremptory order of the court requiring a production of the contracts in question.

Defendant's counsel seem to rely upon the action of the judge at the previous term of the court as a substitute for this peremptory order. It is true that the court required the plaintiffs' counsel instanter to produce the papers in question at the June term, but they were afterwards returned to plaintiffs' counsel, and, according to the undisputed testimony, destroyed prior to the service of the notice to produce. Whether the conduct of plaintiffs' counsel, as insisted by attorneys for the defendant, be reprehensible or not is immaterial upon the consideration of the effect of the notice to produce. If, basing his judgment upon the fact that the papers were not in existence at the time of the service of the notice to produce, or for any other reason, the court, in the exercise of a sound discretion, declined to grant the peremptory order, there could be no judgment rendered under the terms of the Civil Code, §5250. And the motion as offered by defendant's counsel, that a judgment be directed, was perhaps not sufficiently technical. The only judgment that could be rendered against the plaintiffs under the rule would be as in case of nonsuit. The judgment "as in case of judgment by default" is applicable only to judgments against the defendant. We think that the court might have attached plaintiffs' counsel for contempt of court, for destroying

the papers, if it appeared from the record that they had already been admitted in evidence on the previous trial of the case. But this does not appear from the cross-bill of exceptions. It seems that when the papers were tendered by defendant's counsel after the court had required their production, plaintiffs' counsel properly objected that they were not authorized by the pleadings, and that counsel for the defendant, either because he recognized the justness of the objection or because the court sustained it (the record is silent upon the subject), proceeded to amend the defendant's answer to meet the objection, by setting up the contracts as a defense. If this surmise is correct, the papers were really never in evidence. In any event, it plainly appears that the papers in question were destroyed before the service of the notice to produce, and, no matter how the court might properly deal with the plaintiffs' attorney as for contempt of court, he was not required to punish the plaintiffs themselves by the penalty of nonsuit, when it plainly appeared that each of the plaintiffs was ignorant both of the notice to produce and of the destruction of the papers. We therefore see no error in refusing the peremptory order; and, as stated above, without the peremptory order the court could not enter the judgment sought by the defendant. The judgment upon the cross-bill is therefore affirmed.

Plaintiffs in error, in their main bill of exceptions, by complaint specially urged in their motion for new trial, except specially to the admission in evidence of the original live-stock contract entered into between the Missouri, Kansas and Texas Railway Company and the Fort Worth Horse & Mule Company, (1) because said contract had been proved to be without a consideration and nudum pactum; (2) because the stipulations and agreements therein contained are null and void; (3) because the special stipulations contained therein with reference to notice, etc., to be given by the plaintiffs to the defendant, are not binding; (4) because said contract is in violation of the laws of Texas and against the public policy of that State. We do not think that any of these objections are well taken. It is settled that where an action is brought against a carrier for damages dependent upon either statutory or common-law liability, the defendant may plead a special contract in its defense. All of the objections urged by plaintiffs' counsel to the admissibility of the contract

depended upon extraneous evidence, and therefore raised a series of issuable facts. The objections made might properly have been addressed to the *effect* of the contract, but could not possibly bear upon its admissibility. With reference to the first objection, there was no conflict in the evidence nor any proof, as claimed by plaintiff's counsel, that the contract was without consideration, and therefore nudum pactum. The contract declares that the carrier is conveying the shipment at a reduced rate of freight; and we find no evidence in the record which disputes this. The contract also states that the agent of the shipper is to be provided with free transportation from Ft. Worth, Texas, to Baxley, Georgia; and the evidence of one of the plaintiffs fully corroborates this statement. The second objection could well have been overruled, because it sets out no specific ground of objection, so as to enable the court to rule upon it. The third objection, under the decision in *Southern Ry. Co.* v. *Adams,* 115 *Ga.* 705 (42 S. E. 35), was without point. To have determined the fourth objection in favor of the plaintiffs in error, the court would have had to give to the laws of Texas an extra-territorial force not only not authorized by the constitution of the United States, but repugnant to article 1, section 8, paragraph 3 of that instrument (Civil Code, §5974). See also Central of Ga. Ry. Co. *v.* Murphey, 196 U. S. 198 (25 Sup. Ct. 218, 49 L. ed. 444). The contract was to be performed in this State as well as in the State of Texas; and though a contract of carriage is made in a foreign State, it is not necessarily governed, in matters of construction and effect, by the laws of that State, where the contract is to be partly performed in this State and in a number of other States. And this is especially true as to requirements of the contract which are to be wholly performed in this State.

The second special ground of the plaintiffs' motion for new trial complains of the admission of the contract made between Vicksburg, Shreveport & Pacific Railway and J. H. Carter & Company. The objections to this contract, urged by plaintiffs' counsel, and which were overruled by the court, were: (1) "Because the same is irrelevant and inadmissible, because it has not been shown that the Southern Railway Co., the defendant, had any connection with said contract or knew of its existence, until after the filing of this suit; and that the defendant never trans-

ported this property under this contract, or had any connection whatever with the contract. And no consideration is shown upon which to base a new contract." (2) "Because it is not shown that the railway company accepted this stock under this contract, or delivered it under this contract; and upon the further ground that it is a copy of a contract and not the original, the court holding the original had been accounted·for by the evidence as set out in the brief." (3) "Because the defendant, under the evidence, accepted transportation and delivered said stock under the original contract, made at Ft. Worth, Texas, between the Ft. Worth Horse & Mule Co. and the Missouri, Kansas & Texas Railway Co." We think that the ·first objection could have been properly overruled upon the ground that the contract between the Missouri, Kansas & Texas Railway Company and the Ft. Worth Horse & Mule Company, previously introduced, applied by its very terms to any connecting carrier who transported the shipment over any part of the route between Ft. Worth and Baxley; and it was undisputed that the shipment reached Baxley by the Southern Railway Company's line, and the latter company would be presumed, in the ordinary course of such shipments, to be familiar with the terms and conditions of the contract of shipment. The consideration of the contract was supplied by the free pass accepted by the agent of the shipper, if by nothing else. What we have said disposes of all of the second objection to the admissibility of the contract, except that it was further objected that it was a copy contract. There was certainly no error in admitting it upon that ground, for the plaintiffs' counsel had admitted that he had destroyed the original. We can harly imagine a case in which the loss of the original could be more thoroughly accounted for. The third objection was properly overruled, because it does not appear in the evidence under what contract the defendant company accepted or transported the stock in question, or that it was not under the contract thus objected to. There is no merit whatever in the first three grounds of the plaintiffs' motion for new trial.

We think, however, that the fourth ground is meritorious and that the court erred in directing a verdict for the defendant, for the reason that the evidence raised issues of fact which the jury alone could determine. It is true that the plaintiffs could not

recover for damages resulting from failure to feed and water the stock, or for carrying them overtime without food and water and rest, in violation of the United States statute upon that subject; because it appears, without contradiction, that the plaintiff authorized the carrier to proceed without watering and feeding the stock. But the plaintiffs' petition alleged that some of the stock were bruised, wounded, and otherwise damaged in transportation. This could not have been the result of lack of food or water,' but depended upon the manner of running the train. The allegations of the petition upon this subject were perhaps demurrable, but no complaint is made upon that subject. It may be assumed, therefore, that the plaintiffs had a right to recover for injuries received other than those due to lack of food and water, and that the burden of proof was upon the railway company to show that the injuries proved to have been received by the stock were not due to its negligence.

While the contract provides that the claim for damages shall be preceded by a notice in writng, given prior to the unloading of the stock, setting forth the injuries claimed and the amount of the claim, still it was expressly held in *Hill* v. *Telegraph Co.*, 85 *Ga.* 430 (11 S. E. 874, 21 Am. St. R. 166), that this requirement or stipulation of the contract may be waived. In that case it was held that the oral promise of the agent of the telegraph company to look into the claim, and his subsequent refusal to pay, upon the ground that the company was not to blame, was a sufficient waiver that the demand should be in writing. And we think in this case the fact, which appeared from the evidence, that the agent of the Southern Railway Company not only went in company with the plaintiffs' attorney to make an examination as to the justness of the plaintiffs' claim, but also entered upon the freight bill a memorandum that one horse was badly scratched and bruised, might be a sufficient waiver of the stipulation in the contract that the claim should be presented in writing. The purpose of the written notice is to advise the carrier and inform him of the nature of the demand against him. Such a stipulation of the written contract may be waived; and if the carrier's agent, without objection to the form of the notice, receives and acts upon an oral notice, a waiver of the requirement as to its being in writing results. The evidence upon this subject should at least have been

submitted to the jury, for them to determine whether or not the carrier had waived this stipulation of the contract. In *Central R. Co.* v. *Pickett,* 87 *Ga.* 737 (13 S. E. 750), it was held· that no railroad company can legally contract against liability for injuries caused by its own negligence; and a similar notice to that relied upon by the defendant company in this case was held unnecessary, partly upon the ground that the defendant had actual knowledge of the injury. According to some of the testimony, the defendant in this case, through its agent at Baxley, had this knowledge and a fair opportunity for· making a complete examination, before the stock was intermingled. Two questions (omitting other probable issues) in the case should have been considered by the jury,—whether the horses were injured, so far as wounds, cuts, and bruises are concerned, by the negligence of the defendant company, and whether the company waived the requirement that the claim for damages should have been presented to it in writing. If the jury found either of these issues in favor of the defendant, the plaintiffs could not recover, but if the jury found both of these issues in favor of the plaintiffs, they would be entitled to recover such an amount as the evidence might justify. We think, therefore, that the court erred in directing a verdict.

*Judgment, on the main bill of exceptions, reversed; on cross-bill, affirmed.*