## 2783.   WEAVER v. SOUTHERN RAILWAY CO.

1. The contract of affreightment, signed by the plaintiff, was properly admitted in evidence, and the court did not err in allowing the amendment to the defendant's plea, which set up the agreements and obligations of the shipper with reference to the shipment and the undertaking of the shipper in the premises.

2. The court erred, however, in directing a verdict for the defendant, for there was evidence from which a jury might have inferred that some of the cattle which were shipped received injuries, cuts, and bruises not dependent upon or caused by the lack of care and feeding. So far as the stock were damaged by lack of food and attention, the plaintiff was precluded from recovering therefor, because he proceeded on his journey by a passenger train and voluntarily abandoned his stock en route, in violation of his agreement to personally care for, feed, and water them; but, as the jury might have found that some of the stock were injured by violence which even the presence of the owner accompanying them could not have prevented, the plaintiff might have recovered for such damage as was due to injuries of the latter kind.

DECIDED FEBRUARY 22, 1911.

Action for damages; from city court of Atlanta—Judge Calhoun. March 23, 1910.

*Burton Smith, R. W. Crenshaw,* for plaintiff.

*McDaniel, Alston & Black,* for defendant.

RUSSELL, J.   The plaintiff brought an action sounding in tort, against the Southern Railway Company, for a breach of its duty to safely carry and deliver a certain shipment of mules and horses. The defendant at first answered the petition by a general denial of its several paragraphs. Thereafter the court, over objections of the plaintiff, allowed the defendant to amend its answer by setting up the contract, and that the plaintiff was not entitled to recover, because all of the stipulations of the contract, by its express terms, inured to the benefit of the defendant, and the plaintiff failed to comply with the contract; that it was stipulated therein that the shipper would load and unload the animals at his own risk, and feed, water, and attend to them at his own expense and risk while they were in the stockyards of the railway company awaiting shipment, and while on the cars or at feeding or transfer points, or where unloaded for any purpose, whether arising from accident or delay of trains or otherwise, and to that end he or his agent in charge of said live stock should pay regular published passenger fare when proper under rules governing transportation of live stock, and should ride upon the freight train in which the said ani-

mals were transported; and, in case the railway company should furnish laborers to assist in loading and unloading or caring for said live stock, they should be subject to the order and should be the employees of the party of the second part while so assisting. It was alleged that the plaintiff failed to carry out this stipulation, that he failed to accompany the live stock, and that this failure was the cause of their not being watered, fed, or cared for. The amendment also set up the following stipulation of the contract as a defense: "That, as a condition precedent to any right to recover any damage for loss or injury to said live stock, notice in writing of the claim therefor shall be given to the agent or the carrier actually delivering said live stock, wherever such delivery may be made; and such notice shall be so given before said live stock is removed or is intermingled with other live stock." The defendant alleged that this clause of the contract was broken by the shipper, and for that reason he could not recover. The plaintiff objected to the allowance of the amendment, because the contract set up was unreasonable, and because it did not appear that the defendant ever accepted the alleged contract or made itself a party thereto. He objected to the allowance of the third paragraph of the amendment, because it was not stated how or when the shipper could have fed or watered the stock, and it did not appear that an opportunity was given to feed and water them, and because it did not appear how the alleged act of the shipper contributed to the injury of the stock, or what injuries the alleged act caused.

Three questions are presented by the record: (1) Was the contract admissible in evidence as a defense to the action as brought? (2) Was it proper to allow the amendment to the defendant's answer? (3) Did the court err in directing a verdict?

We think that the court was clearly right in allowing the defendant to set up the contract if it could, and to use its provisions as a defense, if by the terms of the contract the shipper had barred any of his rights. It can not be asserted that the contract was unreasonable, for in the case of *Southern Railway Co.* v. *Adams,* 115 *Ga.* 705 (42 S. E. 35), a similar contract was held to be reasonable; and granting that under the ruling of this court in *Carter* v. *Southern Railway Co.,* 3 *Ga. App.* 222 (59 S. E. 603), the plaintiff had the right to show a waiver of the requirement that the notice of a

claim of damage should be in writing, still this would not cut off the defendant's right to assert a defense, but would only raise an issue of fact as to whether there was a waiver of written notice. Under the ruling in *Central Railway Co.* v. *James,* 117 *Ga.* 832 (45 S. E. 223), it is evident that the plaintiff could not recover for any damage to his stock by reason of the fact that they were not fed and watered and properly cared for while being transported from Thomaston to Atlanta, because the evidence is undisputed that, instead of accompanying his stock and riding upon the freight train upon which they were transported, he abandoned the car-load of stock at Woodbury and proceeded by a passenger train to Atlanta. It is argued that he could not have fed and watered the stock even if he had stayed with them. The evidence does not support this view. He was aware when he left the stock at Woodbury that the train on which he had expected to proceed with the shipment to Atlanta had been discontinued; he certainly knew that he had undertaken to care for his stock on the journey, and yet he left them at Woodbury not knowing how long they would remain there before a train would pass which could proceed with the shipment to Atlanta. It is in evidence that there is a feeding place at Woodbury, and it is no answer to the statement that he could have fed his own stock to say that this feeding place was not usually used, and that it was customary to bring stock on in a very short time from Woodbury to Atlanta, and that the car was left upon the track at a point about 100 yards from the feeding place. These facts might have made it a little more difficult for the plaintiff to have fed his stock; but that fact did not relieve him from his obligation to feed them himself, nor impose upon the railroad company, under the terms of this contract, liability for any injury which might result by reason of the stock not being fed. It is fairly inferable that, if the plaintiff had been really anxious to feed his stock, the railroad company would have had the car placed nearer to the feeding pen. There is certainly no evidence that the plaintiff made any request of the railroad company for assistance in feeding the stock, as the contract clearly indicates he might do. He simply preferred his own convenience and comfort, and proceeded on his way to Atlanta, leaving his stock to follow him whenever they could, without regard to whether they were ever fed or cared for. Certainly, under such state of facts, this plaintiff would not be entitled to recover dam-

ages for any of the stock whose injuries might be due to lack of food and water; and the evidence shows that this apparently was the cause of the bad condition of most of the stock which were injured. If there had been no evidence of injuries which indicated violence—injuries which a jury might infer were caused, not by lack of food or attention, but by the running of the train or the manner in which it was operated—the action of the judge in directing a verdict would not afford ground for reversal, because the mere error of directing a verdict would plainly be harmless. But inasmuch as the condition of some of the animals, as shown by the testimony, was not caused by lack of food, these injuries might have been occasioned even if the plaintiff had accompanied the stock, and they afford the plaintiff a right to recover, so far as the stock which were cut or bruised or internally injured are concerned.

We think, therefore, that two questions at least ought to have been submitted to the jury: (1) Whether any of the stock were injured otherwise than by lack of food, water, or attention, and the amount of such damage; and, if this question be answered in the affirmative, (2) whether there was a waiver of the agreement to give written notice of the claim for damages before the stock were unloaded. If the jury find that there was no waiver of this stipulation, of course, under the ruling in *Central Railway Co.* v. *James,* supra, the plaintiff could recover nothing. If the jury should find (as we have assumed to be true) that the defendant company waived the written notice, by sending its stockman and veterinary surgeon to examine the stock, then the plaintiff might recover, but could only recover for damage to the particular animals shown to have been injured by violence, and for such damage as was due to that violence, taking into consideration the fact that such animals may also have been damaged by lack of care and food. The plaintiff can not recover for injury to his stock caused by their not having been fed and watered, because he himself undertook to do this.

There is nothing in the insistence that the initial carrier, the Macon & Birmingham Railway Company, was in the hands of a receiver at the time the contract was made, and that it purports to be signed by the Macon & Birmingham Railway Company, "by B. D. Harden, Agent," for the words "S. F. Parrott, Receiver," are plainly written across the face of the blank contract which was filled

in and signed by the parties, and therefore, when Harden signed as agent, he signed in fact as the agent of the receiver.

We reverse the judgment directing the verdict, not because of any errors of the court in antecedent rulings, but merely because there is some evidence from which a jury might be authorized to find damages not attributable to the plaintiff's breach of the stipulation which required him to feed and water his own stock.

*Judgment reversed.*