## 4252.   LOUISVILLE & NASHVILLE RAILROAD CO. *v.* THARPE.

1. Public policy forbids a common carrier to fix, by a mere arbitrary preadjustment of damages, the measure of its liability in case of loss of or damage to goods delivered to it for transportation. An agreement made in good faith between shipper and carrier, that goods delivered for transportation are of a given value, is valid and enforceable. The facts bring the present case within the rule first above announced.

2. Where, in an action for damages for loss of goods delivered to a common carrier for transportation, the plaintiff proves the actual value of the goods, if the carrier relies upon a stipulation in the contract of affreightment fixing the value of the goods at a sum greatly less than their actual value as shown by the evidence, the burden is on the carrier to show that the sum named in the contract was not a mere arbitrary preadjustment of damages, but was an actual bona fide agreement as to the value of the goods.

3. A stipulation, in a contract of affreightment for the transportation of live stock, that before the animals are removed from the place of destination and mingled with other animals, written notice of claim for damages shall be given to the agent of the carrier, may be waived by the carrier. It appearing in the present case that the agent of the carrier received without objection, and acted upon, an oral notice of the claim for damages, the stipulation in the contract above mentioned was waived, and can not be set up by the carrier in defense to an action for damages for the death of the live stock.

4. The evidence authorized a finding that the death of the live stock was due to the fact that they were given improper food by the agent of the carrier, en route to their destination. The jury were authorized to find that this negligent act of the carrier caused the plaintiff damage. There were no material errors of law, and the recovery in favor of the plaintiff can not be interfered with.

DECIDED SEPTEMBER 17, 1912.

Action for damages; from city court of Moultrie—Judge McKenzie. May 16, 1912.

30

On October 28 a car-load of mules was delivered to the Louisville & Nashville Railroad Company at Columbia, Tennessee, to be shipped to the plaintiff at Moultrie, Georgia, over the lines of the Louisville & Nashville Railroad Company to Montgomery, Alabama, and from that point to Albany, Georgia, over the Central of Georgia; and from Albany to Moultrie over the lines of the Georgia Northern Railway. The car reached Montgomery on Saturday afternoon, October 29, and remained there over Sunday, arriving at Moultrie on the afternoon of November 1. While at Montgomery the agent of the initial carrier fed and watered the stock. The shipment was made under a special contract of affreightment, signed by the initial carrier and the Columbia Mule Company, the consignor, which contained, among other things, the following stipulations: "Said shipper will load and unload said animals at his own risk, and feed, water, and attend the same at his own expense and risk while they are in the stock-yards of the carrier awaiting shipment, and while on the cars or at feeding or transfer points, or where they may be unloaded for any purpose. . . Should damage occur for which the said carrier may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed, for a stallion or jack, $150; for a horse or mule $100; mare and colt together $100; yearling colt $50; cow and calf together $35; domestic horned animals $30 each; yearling cattle, each, $15; calves, hogs, sheep, or goats, $5 each; chickens, ducks, and guinea-fowls, $2.50 per dozen. . . As a condition precedent to the shipper's right to recover any damages for loss or injury to said animals, he will give notice in writing of his claim thereof to the agent of the railroad company or other carrier, from whom he receives said animals, before said animals are removed from the place of destination above mentioned, or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals." Endorsed on the paper containing these stipulations was the following: "The attention of the shipper has been called to the terms, conditions, value, etc., herein named;" also, "Bill of lading accepted with full knowledge of all its conditions, shipper's load and count."

When the mules reached Moultrie the plaintiff unloaded them from the car and placed them in his barn in that city. The next

day several of the mules appeared to be sick, and the plaintiff verbally notified the agent of the Georgia Northern Railway at Moultrie of this fact, and this agent in turn notified the Central of Georgia Railway Company, but did not notify the initial carrier. The agent at Moultrie promised the plaintiff to examine the stock, but, having been later informed that the stock appeared to be all right, did not make the examination. Shortly afterward eight of the mules died. On November 16, while the remainder of the mules were still in the plaintiff's barn and before they had been mingled with other stock, the plaintiff caused written notice of the death of the eight mules and his claim for damages therefor to be served upon the agent of the Georgia Northern Railway Company at Moultrie. Suit was thereafter brought against the initial carrier for $1,950, as the value of these eight mules. The plaintiff testified, in substance, that the agent at Moultrie at first refused to permit him to take the mules from the car before the surrender of the bill of lading, which had not yet arrived, but finally agreed that he would turn the mules over to him as "railroad mules," and that he might place them in his barn. It appears that the mules were shipped at a reduced rate of freight. The plaintiff testified, that, so far as he knew, the same rate was charged that was ordinarily charged for freight of that character; that he had made no agreement with the carrier in reference to the value of the stock, and that, so far as he knew, the shipper made no such agreement. There was no evidence, other than the statements appearing in the bill of lading, in reference to any agreement between the initial carrier and the shipper as to the value of the stock. There was evidence for the plaintiff that the actual value of the eight mules that died was $1,950. The plaintiff's theory was that the mules had died as a result of having been fed decayed and poisoned food in Montgomery by an agent of the defendant. There was testimony that the death of the mules was the result of having eaten improper food within twenty-four or thirty-six hours before their death. There was also evidence that when the mules were fed by the plaintiff after they reached Moultrie, the food given was of the best quality and not defective in any respect. It appears, from the evidence, that within twenty-four or thirty-six hours before their arrival at Moultrie they were fed at Montgomery, Alabama, by an agent of the initial carrier. The verdict was for

the amount sued for. The defendant's motion for a new trial being overruled, it excepted.

*Tye, Peeples & Jordan, J. H. Merrill,* for plaintiff in error.
*W. W. Dykes, Shipp & Kline,* contra.

POTTLE, J. (After stating the foregoing facts.) 1-2. It is argued in behalf of the defendant that if the plaintiff was entitled to recover at all, he could not recover more than $100 for each of the mules, that being the valuation agreed on in the contract of affreightment. While the liability of a carrier of live stock is somewhat different from that of a common carrier of other things, growing out of the inherent differences between live stock and inanimate property, nevertheless, a common carrier of goods which transports live stock is, as to such property, a common carrier. In this State a common carrier is not permitted to relieve itself, by contract, from liability resulting from its own negligence, except that it may stipulate for liability only in the event of gross negligence. *Cooper* v. *Raleigh & Gaston R. Co.,* 110 *Ga.* 659 (36 S. E. 240). As a corollary from this principle, it follows that a common carrier can not, by a mere arbitrary preadjustment of damages, enter into an agreement that in case of loss or damage it shall be liable only for a named sum, less than the actual damages which have been sustained by the owner. This question was thoroughly considered by the Supreme Court in the case of *Central Railway Co.* v. *Hall,* 124 *Ga.* 322 (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. Rep. 170, 4 Ann. Cas. 128), where, after reviewing the previous decisions of the Supreme Court, the rule was announced to be as follows: "A railway company in its capacity as a common carrier may, as a basis for fixing its charges and limiting the amount of its corresponding liability, lawfully make with a shipper a contract of affreightment embracing an actual and bona fide agreement as to the value of the property to be transported; and in such case the latter, when loss, damage, or destruction occurs, will be bound by the agreed valuation. But a mere general limitation as to value, expressed in a bill of lading, and amounting to no more than an arbitrary preadjustment of the measure of damages, will not, though the shipper assent in writing to the terms of the document, serve to exempt a negligent carrier from liability for the true value."

There is no evidence in the present case that there was any actual

bona fide agreement between the shipper or the owner and the carrier as to the value of the property to be transported. So far as appears, the sum fixed in the contract of affreightment was a mere arbitrary amount, without any reference to the real value of the property transported. The fact that on the bill of lading there was an endorsement that the shipper's attention had been called to all of the terms of the bill of lading and that he had assented thereto does not alter the rule. It is contended, however, that this stipulation ought at least to cast the burden on the owner of the stock to prove that the stipulation as to the value was not a bona fide agreement, but only an arbitrary preadjustment of damages. We can not assent to this view. A common carrier can not stipulate against negligence. To permit it to contract in case of loss on account of its negligence to pay a sum greatly less than the real value of the article lost would be in effect to permit it to contract against its own negligence. Where it is shown that the article transported is lost as a result of the negligence of the carrier, and the value of the article thus lost is also made to appear, and this value is largely in excess of the amount fixed in the contract of affreightment, the presumption is that the carrier has endeavored by contract to relieve itself from liability resulting from its negligence, and the law casts upon the carrier the burden of showing that that which appears to be a contract against negligence and a mere arbitrary preadjustment of damages was really an agreement entered into in good faith between the parties, upon a sufficient consideration, that the real value of the property was as stated in the bill of lading. In this case the owner testified that he did not make any agreement in reference to the value, and that, so far as he knew, the shipper had made no such agreement in his behalf. This being so, the carrier could reduce the amount of its liability below the actual value of the mules only by showing that a bona fide agreement was entered into between the shipper and the carrier, fixing the value of the property at the amount stated in the bill of lading. Not having carried this burden, the carrier can not rely upon what appears to be a mere arbitrary statement in the bill of lading as to the value of the property transported. See Hutchinson, Carriers (3d ed.), § 427, p. 449. This we think is the right result, irrespective of the provisions of the act of Congress known as the "Hepburn

act." That act provides that a common carrier transporting property from a point in one State to a point in another State shall issue a bill of lading therefor, and "shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." The language of this section is very broad, and probably prohibits any limitation, even by express bona fide agreement, on the value of the goods shipped. Indeed, Mr. Hutchinson states broadly that such a limitation would be absolutely void as in violation of the section of the "Hepburn act" above quoted. Hutchinson, Carriers (3d ed.), § 548. As stated above, however, it is not necessary for us to make any authoritative ruling upon this question.

3. It is further contended that the plaintiff was not entitled to recover, because he failed to give notice in writing of his claim, as provided in the contract of affreightment. This contract provides that written notice of the claim for damages shall be given to the agent of the carrier before the animals are "removed from the place of destination above mentioned, or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals." Such a stipulation is reasonable and valid. *Roberts* v. *G. S. & F. Ry. Co.,* 10 *Ga. App.* 100 (72 S. E. 942), and citations. In order, however, for such a stipulation to be held to be reasonable, it must be given a reasonable construction. See Hutchinson, Carriers (3d ed.), § 443. The purpose of the notice is to enable the carrier to examine into the claim of damages before the animals become mingled with other stock, and thus, either through mistake or through fraud, the carrier may be deceived in reference to the extent of the damages or loss. Hutchinson, Carriers (3d ed.), § 444. To hold that the stipulation required notice of damage to be given before it was discovered, or could by the exercise of ordinary care be discovered, would be to give the stipulation an unreasonable construction. It is argued in behalf of the plaintiff that as Moultrie was the place of destination named in the bill of lading, i. e. "the place above mentioned," a notice given before the animals were removed from

Moultrie would be a compliance with the contract. We do not think, however, that this is a fair meaning to give the stipulation. Such a construction might possibly be admissible if the language, "removed from the place of destination above mentioned," stood alone; but this language must be taken in connection with the language following, to wit, that the notice must be given before the animals are removed from the place of delivery and before they are mingled with other animals. A fair construction of this stipulation, taking all the language together, would seem to be that after the animals are unloaded from the car and delivered to the consignee, he must give notice of any damage which he discovers, or which, by the exercise of ordinary care, he might discover before he takes the animals away and mingles them with other animals. It is well settled, however, that while such a stipulation is reasonable and valid, it may, nevertheless, be waived by the carrier, either expressly or impliedly. *Roberts* v. *G. S. & F. Railway Co.*, supra, and citations. In *Central Railway Co.* v. *Pickett, 87 Ga.* 734 (13 S. E. 750), it was held that where the stock never reached the place of destination and the plaintiff had actual knowledge of the injury from the beginning of the journey, and the stock were taken from the car with the defendant's consent, written notice as contemplated by the contract was unnecessary. In *Hill* v. *Telegraph Co., 84 Ga.* 425, 430 (11 S. E. 874, 21 Am. St. Rep. 166), it was held that while the agent of the carrier was not bound to recognize an oral demand, yet if he did so, making no objection to it on the ground that it was not in writing, this would amount to a waiver. In *Carter* v. *Southern Railway Co., 3 Ga. App.* 34, 42 (59 S. E. 209), it was held that if the carrier's agent, without objection to the form of the notice, received and acted upon it, this would amount to a waiver of the requirement as to written notice. In the present case, without reference to the question whether the written notice given on November 16 was a compliance with the terms of the contract, we think there was sufficient evidence to authorize the jury to find that written notice was waived. There was an express agreement between the plaintiff and the agent at Moultrie, that he should be allowed to take the mules and put them in his barn as "railroad mules." From this it is inferable that until the next day when the bill of lading was surrendered, the plaintiff was the agent of the railroad company to take charge of

the car of mules. As soon as it was discovered that the mules were sick the plaintiff notified the local agent at Moultrie and he in turn gave notice to the Central of Georgia Railway Company, one of the connecting carriers. It is thus apparent that the agent at Moultrie, who was, of course, the agent of the initial carrier, received and acted upon the oral notice. His conduct was such that the jury might find that he waived the stipulation in the contract requiring written notice to be served upon the carrier.

4. The evidence was conflicting. It may be that under the terms of the contract requiring the shipper or owner to accompany the stock and feed and water them, the railroad company was not bound to feed the stock. See, in this connection, *Weaver* v. *Southern Railway Co.*, ante, 355 (75 S. E. 447). When the carrier undertook to feed and water the stock, it was, of course, bound to give them proper food, and exercise at least ordinary care and diligence in feeding and watering them. While there was direct evidence in behalf of the carrier that the food given the stock at Montgomery was not defective in any respect, there was evidence from which the jury were justified in finding that the stock were improperly fed at Montgomery and that this improper feeding was the cause of the death of eight of the mules. This being so, it can not be said that the jury were not authorized to find that the defendant had failed to overcome the presumption of its negligence, arising from proof of the damage. There are several special assignments of error as to instructions of the court. What we have said above disposes of all the material questions arising in the case, and there was no such error in any of the instructions complained of as requires the grant of a new trial.

*Judgment affirmed.*