#### 4818.   CRANOR v. SOUTHERN RAILWAY COMPANY.

1. Where in a suit for damages on account of negligence the verdict is in
   effect that the defendant was not guilty of negligence, and a motion for
   a new trial, filed by the plaintiff, is overruled, if this judgment is
   affirmed it is immaterial whether the trial judge erred in striking cer-
   tain items of damage from the petition.

2. A common carrier of live stock can not contract against liability caused
   by his own negligence, but may make reasonable stipulations in refer-
   ence to matters which are merely incidental to. the transportation of
   the animals, such as loading and unloading, and caring for the stock.
   If such a contract is made, the shipper can not recover for any damage
   which results from his own failure to comply with his engagement.  In
   view of the allegations of the petition in the present case, it was com-

petent for the defendant to plead a contract of the nature above indicated.

3. Where goods are transported over the lines of several carriers, under a contract with the initial carrier for delivery at destination, each succeeding carrier is the agent of the first carrier, and as such, if sued for loss of or damage to the goods, is entitled to the benefit of any contractual exemption which the initial carrier would have been allowed to plead had he been sued for the failure to transport safely. This rule is applicable to carriers in interstate as well as in intrastate commerce.

4. There is nothing in the act of Congress known as the "Hepburn act," or in the Carmack amendment to that act, which prohibits a carrier of live stock from stipulating against liability resulting from the failure of the shipper to accompany and care for the stock, or from entering into any other reasonable stipulation which does not amount to a contractual exemption from liability on account of the carrier's negligence.

5. Under the evidence the real issue was whether the defendant had improperly fed and watered the live stock; and therefore the contract of affreightment which required the shipper to accompany and feed and water the stock was not material, but its admission in evidence did not result in injury to the plaintiff.

6. If the provision in the contract of affreightment requiring the carrier to furnish the shipper free passage for himself or agent, in order to enable him to accompany the stock, was valid and binding upon the parties, it was the duty of the shipper to apply for transportation. Having failed to request that a pass be issued to him in accordance with the terms of the contract, he can not urge as an excuse for failing to accompany the stock the failure of the carrier to issue the transportation.

7. The evidence demanded a finding that the contract of affreightment was issued to the plaintiff in consideration of a reduced rate of freight.

8. The evidence authorized the verdict, and there was no error in overruling the motion for a new trial.

DECIDED JUNE 25, 1913. REHEARING DENIED JULY 15, 1913.

Action for damages; from city court of Atlanta—Judge Reid. January 25, 1913.

*A. H. Davis,* for plaintiff.

*McDaniel & Black, E. A. Neely,* for defendant.

· POTTLE, J. The plaintiff sued the railway company for damages on account of injuries to certain live stock in a car which was delivered to the Atlantic Coast Line Railroad Company in Deland, Florida, consigned to Howell Station, Georgia, for transportation by the Atlantic Coast Line and connecting railroads to Atlanta, Georgia. The car of stock was delivered by the initial carrier to the Southern Railway Company at Jacksonville, Florida, for transportation to Atlanta. The consignee at Howell Station was the plaintiff's agent in and about the reception and caring for the stock after arrival. The contract made with the initial carrier bound

it to carry the stock to Jacksonville and deliver it to a connecting carrier; and the defendant company received the stock at Jacksonville and undertook to transport the same with due diligence to the place of destination. Delivery was made by the defendant to the consignee on April 28, 1910, but the stock were in very bad condition, being run-down, jaded, and sick. One horse and one mule died on April 30, and another horse continued sick and died a week or ten days after arrival. The defendant was immediately notified of the condition of the stock, and had them examined by a veterinarian. While in transportation from Jacksonville to Atlanta, the stock were entirely under the control and care of the defendant, the plaintiff having no agent with the stock and having no arrangement or agreement with the defendant that he or his agent should accompany the same. The plaintiff alleges that the stock were sound and in good condition when delivered to the defendant; that the defendant failed to take proper care of the same and furnished them with insufficient food, did not water the stock properly and sufficiently, and gave them impure water to drink which poisoned them; that by reason of the defendant's negligence it became necessary for the plaintiff to come to Atlanta and look after the care and treatment of the stock; that in order to cure them and put them in a salable condition, he incurred certain necessary items of expense, such as railroad fare, board, and feed for the stock and treatment by a veterinarian. In addition to these items of damages, the plaintiff lost the value of three head of stock which died, and certain sums on account of deterioration in value of others. Upon demurrer the court struck from the petition the claim for damages on account of the plaintiff's railroad fare and expenses.

The defendant answered, denying all allegations of negligence. By amendment the defendant pleaded that the shipment of live stock was made under a through contract of affreightment between the plaintiff and the Atlantic Coast Line Railroad Company, in consideration of a reduced rate. This contract provided that in consideration of the reduced rate and of a free pass issued to the owner or his agent, the owner released all the carriers from risk of injury to the animals in consequence of their inherent nature, or resulting from any material used by the owner for feed of the stock or from certain other causes. The contract further stipulated that the owner should feed, water, and attend to the stock at his own ex-

pense and risk while in the railroad stock-yards awaiting shipment, or at a transfer point, or while unloaded for any purpose; also that the owner should ride upon the freight-train upon which the stock was transported; that the value of each horse or head of stock did not exceed $75; that notice in writing of any claim for damages should be given to the carrier before the stock were moved from the place of destination; and that, if it was necessary for the stock to be transported over the line of any other carrier or carriers to the point of destination, delivery might be made to such other carrier for transportation upon such terms and conditions as it might be willing to accept, provided that the terms and conditions of the contract made with the initial carrier should inure to the benefit of such other carrier, but that no carrier should be liable for the negligence of any other carrier. This amendment was objected to by the plaintiff upon the following grounds: (1) that it did not sufficiently appear that the defendant railway company accepted the shipment upon the terms and conditions of the contract made with the initial carrier; (2) that no facts were alleged which would bring the defendant under any of the exceptions or exemptions from liability stipulated in the contract; (3) that it did not appear from the amendment how or why the terms of the contract inured to the benefit of the defendant; (4) that there was no allegation that the plaintiff had been furnished with free passage; and the terms of the contract in reference to this matter and the requirement that the owner accompany the stock were irrelevant, there being no claim of liability except from improper feeding and watering; (5) that there was no allegation that the failure of the owner to accompany the stock and feed and water them was the proximate cause of the damage; (6) that no sufficient reason is shown why the terms or conditions of the contract made with the initial carrier inured to the benefit of the defendant, and the burden of proving that the stock were transported by the defendant under the terms of such a contract was upon the defendant. The court allowed the amendment, and the plaintiff excepted pendente lite. The trial resulted in a verdict in favor of the defendant. The plaintiff's motion for a new trial was overruled, and he excepted, assigning error upon the judgment striking certain items of damage from his petition, upon the allowance of the amendment offered by the defendant, and upon the overruling of the motion for a new trial.

1. Since the jury found for the defendant and we have reached the conclusion that the evidence authorized the finding that the defendant was not negligent, and that the judgment overruling the motion for a new trial should be affirmed, the ruling of the court in striking from the plaintiff's petition certain items of damage which he claims the right to recover becomes immaterial. The court was clearly right, under the facts alleged, in ruling that the plaintiff was not entitled to recover traveling expenses incurred in coming to Atlanta to ascertain the condition of the live stock. This was not a legitimate item of damages recoverable from the defendant on account of its breach of duty in failing to deliver the live stock safely at the point of destination.

2. A carrier of live stock is a common carrier, but, on account of the nature of the goods to be transported, the carrier is permitted to make a special contract imposing certain obligations upon the shipper and exempting the carrier from liability for damages for loss or injuries not resulting from the negligence of the carrier. Public policy forbids a carrier to contract against liability caused by its own negligence, but it does not prevent the carrier from contracting with the shipper for the performance of certain acts which may facilitate the safe transportation of the goods. The duty of the carrier is to transport safely. Its failure to perform this duty is negligence from which liability arises. But in carrying live stock, there are certain things necessary to be done apart from the transportation of the animals, such as loading and unloading, feeding, and watering. They must be secure from escape; they must be protected from heat and suffocation and overcrowding. In the absence of such a contract it would be the duty of the carrier to do everything essential for the protection and safe delivery of the animals. But reasonable stipulations in a contract of affreightment are binding on the shipper if they do not amount to a stipulation against liability for negligence of the carrier. See Hutchinson on Carriers, § 419; *Louisville & Nashville Railroad Co.* v. *Tharpe,* 11 *Ga. App.* 465 (75 S. E. 677); *Weaver* v. *Southern Ry. Co.,* 9 *Ga. App.* 34 (70 S. E. 222); s. c. 11 *Ga. App.* 355 (75 S. E. 477); *New England Steamship Co.* v. *Paige,* 108 *Ga.* 296 (33 S. E. 969); *Southern Ry. Co.* v. *Adams,* 115 *Ga.* 705 (42 S. E. 35). The petition having alleged that the defendant failed to take proper care of the stock and failed to water and feed the stock

properly, it was competent for the defendant to plead a contract of affreightment which required the owner to accompany and feed and water them himself. The contract was not irrelevant as pleading, even if it could be said to be inapplicable to the facts as shown by the proof.

3. It is contended that the burden was on the defendant to show that the special contract inured to its benefit, and that no facts sufficient to carry this burden are pleaded in the amended answer. Where goods are to be transported by more than one carrier and the initial carrier makes a contract to deliver at destination, the connecting carriers are agents of the initial carrier and entitled to the benefit of any contractual exemption which the initial carrier would have been allowed to plead had it been sued for its failure to transport safely. The rule is otherwise where the initial carrier contracts to convey only to the end of its own line and there to deliver to a succeeding carrier en route. In such a case the initial carrier has no interest in the further transportation of the goods after they are delivered to the succeeding carrier, unless there is something in the contract, or a statute, which stipulates to the contrary. 1 Hutchinson on Carriers, § 472. It has been expressly held by the Supreme Court of the United States that in the case of an interstate shipment, any limitation of liability in a contract made with the initial carrier which is valid as to such carrier, inures to the benefit of the succeeding carriers. Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639 (33 Sup. Ct. 391, 57 L. ed.     ). In the present case it appears that the Atlantic Coast Line Railroad Company contracted to deliver the goods at destination, and, under the decision just cited, every valid stipulation in the contract of affreightment bound not only the parties to the contract, but was binding upon and inured to the benefit of the succeeding carriers. In addition to this, the contract itself expressly provided that the terms and conditions of the contract should inure to the benefit of all connecting carriers unless otherwise stipulated in the contract.

4. It is argued, however, that under the Hepburn act and the Carmack amendment a carrier of goods in interstate commerce is not permitted to exempt itself from liability by stipulations requiring the shipper to accompany the stock and feed and water them, and requiring notice of any claim for damages to be given before the stock are removed from the place of destination, and

fixing an agreed value to be recovered in case of loss, and similar stipulations. Counsel correctly contend that the act of Congress supercedes all regulations and laws of the States upon the subject-matter dealt with in the act. Adams Express Co. v. Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed.      ); Kansas City Southern Ry. Co. v. Carl, supra; *Southern Pacific Co.* v. *Crenshaw,* 5 *Ga. App.* 675 (63 S. E. 865). In determining the rights and liabilities of the parties to the contract stipulating for the carriage of goods in interstate-commerce, the acts of Congress and the decisions of the United States Supreme Court construing them are controlling. Under those acts a carrier can not stipulate against liability resulting in whole or in part from its own negligence. Adams Express Co. v. Croninger, supra. In that case it was held that in consideration of the reduced rate an interstate carrier might limit the amount recoverable by the shipper to an agreed value. The Carmack amendment to the Hepburn act provided that any common carrier receiving property for transportation from a point in one State to a point in another State shall issue a bill of lading therefor, and shall be liable to the lawful holder thereof for any loss or damage caused by it or any of the succeeding carriers over whose line the property might pass, and that "no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." Recent decisions of the Supreme Court of the United States make it plain that while under the act of Congress a carrier can not stipulate against its own negligence, it may enforce reasonable stipulations in a contract of affreightment which are not designed to exempt it from consequences of its own neglect. There is nothing in the act of Congress, as construed by the Supreme Court of the United States, which would prohibit a carrier of live stock from entering into a fair and reasonable agreement with a shipper with reference to the care of the stock while being transported, and as to things incidental to the transportation of the animals, but necessary to be done on account of the nature and the character of the goods being transported. In the absence of contract the carrier would be bound to feed and water the stock. He may by contract bind the shipper to perform this service, and for any injury or damage resulting from the failure of the shipper to comply with his part of the con-

tract the carrier would not be liable. Weaver v. Southern Ry. Co., supra. As to this matter there is no difference between interstate and intrastate shipments.

5. Under the evidence the real issue was as to whether the stock had been improperly fed and watered by the defendant's employees. Under its contract the carrier was not bound to feed and water the stock at all, but if it undertook to do so, it was, of course, bound to exercise due care to see that the stock were not given poisoned water or impure food. *Louisville & Nashville Railroad Co.* v. *Tharpe,* supra. It appeared, from the evidence, that the carrier did feed and water the stock. The jury found that it was not guilty of any negligence in reference to the character of food and water furnished the stock, and there was ample evidence to justify this finding. In view of the fact that the carrier undertook to water and feed the stock and did not rely upon the stipulation in the contract requiring the shipper to accompany and care for the stock, this provision in the contract became irrelevant; but its admission in evidence resulted in no harm to the plaintiff.

6. In view of the issue upon which the case turned, it was really not material whether the plaintiff accompanied the stock or not. The plaintiff proposed to prove that he did not demand of the carrier a free pass to accompany the stock, because it had been the practice of the railroads in this section of the country to refuse to give a pass to shippers of live stock, and it was not their custom to do it. If the stipulation in the contract requiring the carrier to furnish a pass was valid and binding, no previous practice or custom could relieve it from this obligation. It was the duty of the plaintiff to apply for transportation as stipulated in the contract, and if the carrier failed to furnish it, the shipper's failure to accompany and care for the stock might be excused. The evidence fails to show that the carrier refused to furnish the transportation, or that any application was made to it by the plaintiff for a free pass as stipulated in the contract. *Georgia Railroad Co.* v. *Reid,* 91 *Ga.* 377 (17 S. E. 934).

7. "Courts will not take judicial cognizance of the schedule of rates filed by a carrier with the interstate-commerce commission and published as required by the acts of Congress." *Hartwell Ry. Co.* v. *Kidd,* 10 *Ga. App.* 771 (74 S. E. 310). The contract recites that the rate therein fixed was less than the maximum rate which

the carrier was allowed to charge, and that the reduction in the rate constituted the consideration for the contract. There was affirmative testimony by one of the defendant's agents that the rate charged the plaintiff was less than the maximum which the carrier was allowed to charge under its schedule filed with and approved by the interstate-commerce commission. There was no objection to this testimony on the ground that there was higher and better evidence; and the finding that the rate charged the plaintiff was in fact less than the maximum allowed was demanded. ·

8. The foregoing deals with all of the material questions raised by the record. The evidence fully authorized the verdict, and there was no error in overruling the motion for a new trial.

*Judgment affirmed.*

### ON MOTION FOR REHEARING.

The plaintiff in error challenges the correctness of the court's construction of the contract of affreightment, and of the ruling announced in the third division of the opinion. It is contended that the contract of carriage under which the live stock was transported was one merely to transport to the end of the line of the receiving carrier and there to deliver to the defendant company. This construction of the contract is based upon the recital in the record that a contract of shipment was introduced in evidence, acknowledging the receipt of the car of live stock from the Atlantic Coast Line Railroad Company, consigned to Howell, Georgia, "to be delivered to such carrier whose line may be considered a part of the route to destination, it being understood that the responsibility of the A. C. L. Railroad shall cease at said station when delivered." The Atlantic Coast Line Railroad Company received the car of live stock for shipment to Howell, Georgia, over its own line and the lines of such other carriers as were necessary to complete the shipment. By the express terms of the Hepburn act as amended, when the Atlantic Coast Line Railroad Company delivered its receipt for the live stock, it became liable for any loss or damage caused by it or by any other carrier to whom the live stock was delivered, or over whose line the property might pass. It could not by contract exempt itself from liability thus imposed. Consequently the Atlantic Coast Line Railroad Company became bound, when it received the goods, to see that they were safely delivered at destination. The recital in the contract, to the effect that its responsibility

should cease on delivery of the goods to the Southern Railway Company at Jacksonville, was absolutely null and void. The contract into which the initial carrier entered became, under the terms of the act of Congress, a through contract. Moreover, the contract itself recited that in consideration of the transportation of the stock at the reduced rate of $69.75 per car, the shipper agreed to release the carrier from liability for certain acts not amounting to negligence. The rate thus fixed was a through rate to destination, which the initial carrier could collect. It is apparent, therefore, from the very language of the contract itself, that the company undertook to transport to destination and was entitled to be paid therefor. Of course, in so doing it was compelled to use the agency of certain connecting carriers, but it was bound to the same extent as if the goods had been transported over its own line from the point where it was received to destination. We are satisfied that the contract of affreightment was properly construed in the original opinion, and nothing has been presented in the motion for a rehearing to require any change in or modification of the judgment rendered.

*Rehearing denied.*