HILL *v.* THE WESTERN UNION TELEGRAPH COMPANY.

1. When the blank upon which the sender of a telegraphic message writes and signs the same has printed upon its face the words, "The company will not be liable for damages in any case where

the claim is not presented in writing within 60 days after sending the message," he is chargeable with knowledge of and assent to the terms and conditions thus indicated.

2. Such a stipulation is reasonable and therefore obligatory.

3. The agent or manager of the company on duty at the station from which the message was sent is a proper person upon whom to make demand for the damages claimed, and he is competent to recognize and act upon an oral demand and thus waive any writing. Such a waiver will result from his refusal to pay upon the sole ground that the company was not to blame.

May 7, 1890.

Notice. Telegraph companies. Damages. Demand. Waiver. Principal and agent. Before Judge MEYER-HARDT. City court of Floyd county. December term, 1889.

On November 2.3, 1888, E. G. Hill obtained a judgment and decree against I. P. Harris and J. B. Little, and on December 10th execution for $412.44 was issued, and on December 21st it was levied on certain property by the sheriff. On November 4th, 1889, Hal Wright, acting as agent and attorney for E. G. Hill, sent from Rome to Cedartown a message through the telegraph company to the sheriff who had levied the above mentioned execution, requesting that "if property sell under Hill *fi. fa.*, get Ivy Thompson to bid for me as high as $250.00." The company erroneously transmitted the message so that when it was delivered to the sheriff, the amount to be bid by Thompson appeared to be $6.25 instead of $250.00. Thompson sent one Huntington to the sale for the purpose of bidding the smaller amount, which was done; but one Davitt, who was present, announced that he claimed the property levied on and being sold, and if any one bid on it and bought it, he would get it with a lawsuit. Davitt then bid $21.65, and the property, which was worth at least $800, was knocked down to him for the amount of his bid. Afterwards Wright went to Cedartown, where the sale took place, to find out why the property did not bring more, and the

sheriff showed him the telegraphic message as delivered. The operator at that place told him that was the telegram he received, and that it was the one he had delivered to the sheriff. Wright then went to Woodruff, the company's manager at Rome, and told him that Hill had been damaged $400 or $500, and that the company would have to pay Hill for the same. Woodruff said wait awhile and he would investigate it and find where the blame rested. This was about three weeks after the damage occurred; in about two more, Wright asked Woodruff what the company would do, and Woodruff replied that it was not to blame and Hill would have to look to the operator in Cedartown for the damage. On May 25th, Hill brought suit against the company, laying his damages at $400.24, and alleging that the property sold under the execution and for which he desired to bid as high as $250, was worth fully enough to pay the entire amount of the execution, principal, interest and costs, and had he purchased the same it would have been worth to him $400.24; that it was the only property of the defendants, Harris and Little, from which to make the amount of the execution; that they are insolvent; and that his profits, had he purchased the land, would have been equal to $150.24, for by his skill and the expenditure of $50, he could have realized by the sale of said investment the sum of $450.24.

Wright wrote the message as delivered to the company in Rome, upon one of its blanks, at the head of which was printed that the company "will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message"; and that all messages taken by the company are subject to these and other terms there stated. The company moved for a nonsuit on the ground that, as appeared from the evidence, no demand or claim for damages

had been given in writing to it or its agents within sixty days as required by its rules and regulations printed on the blank on which the message was sent. The motion was sustained and the nonsuit was granted, and the plaintiff excepted.

WRIGHT & HARRIS, for plaintiff.

BIGBY & BERRY and C. ROWELL, for defendant.

BLECKLEY, Chief Justice.

It was certainly a gross error to substitute $6.25 in the dispatch delivered. by the company for $250.00 in the dispatch as sent. Such an error unexplained is ample evidence not only of negligence, but of gross negligence. The motion for a nonsuit which the court granted was based on the single ground that no demand or claim for damages had been made in writing within 60 days, as required by the rules and regulations of the company printed on the blank upon which the message was sent.

1. The rule referred to was in these terms: "The company will not be liable for damages in any case where the claim is not presented in writing within 60 days after sending the message." This was printed in small type at the head or top of the written message. And lower down on the same page were the words, also in small type: "Send the following message subject to the above terms, which are hereby agreed to." At the bottom of the page were the words, in large type: "☞ Read the notice and agreement at the top." The point was made in argument that the rule as to the mode and time of presenting a claim for damages was not obligatory upon the sender of the message, because not agreed to by him, nor even known to him, according to the evidence, until after this suit was brought. According to the weight of authority in like or analogous cases, he could by reasonable diligence

have been aware of this rule, and by writing and signing the message on the same page upon which the rule was set forth, he signified to the company both his knowledge of it and his assent to it. Breese v. W. U. Tel. Co. 45 Barb. 274, affirmed in 48 N. Y. 132, s. c. 8 Am. Rep. 526; Redpath v. Id., 112 Mass. 71, s. c. 17 Am. Rep 69; Grinnell v. Id., 113 Mass. 299, s. c. 18 Am. Rep. 485; W. U. Tel Co. v. Carew, 15 Mich. 525; Womack v. W. U. Tel. Co., 58 Tex. 176, s. c. 44 Am. Rep. 614; W. U. Tel. Co. v. Edsall, 63 Tex. 668; Beasley v. W. U. Tel. Co, 39 Fed. Rep. 181; Notes to Gillis v. Id., 4 Lawyers Rep. An. 611; 2 Shearman & Redfield on Negl. 552.

2. It is also insisted that the rule is unreasonable and for that reason not obligatory. We, however, think it reasonable, and many other courts have so considered it. Greenhood Pub. Pol. 507; 2 Thomps. Negl. 846, 9; Wolf v. W. U. Tel. Co., 62 Penn. 83; Young v. Id., 65 N. Y. 173; Heimann v. Id., 57 Wisc. 562; Cole v. Id., 33 Minn. 227; W. U. Tel. Co. v. Meredith, 95 Ind. 93; Id. v. Jones, Ib. 228; Id. v. Yopst, 118 Ind. 249; Massengale v. W. U. Tel. Co., 17 Mo. Ap. 257; Beasley v. Id., 39 Fed. Rep. 181. For analogous cases, see Express Co. v. Caldwell, 21 Wall. 264; Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386; *Brown* v. *Ins. Co.*, 24 *Ga.* 97; *Underwriters' Agency v. Sutherlin,* 55 *Ga.* 266; Greenhood Pub. Pol. 505.

But while we are of opinion that the telegraph company was entitled to have the claim for damages presented in writing within 60 days after the message was sent, we think that right could be waived, and that the evidence in the record tended to prove that it was waived, not indeed as to the time, but as to the mode of making the demand. The evidence indicates that, if any damage was sustained, it occurred in February, 1889, immediately after the telegram was sent. Wright, the sender

of the message, who acted as agent and attorney for Hill, the plaintiff, testifies that about three weeks after the damage occurred, he went to Woodruff, the manager of the company's business at Rome, and told him that Hill had been damaged four or five hundred dollars, and that the company would have to pay Hill for the same. Woodruff said to wait awhile, and he would investigate and find where the blame rested. In about two weeks thereafter, Wright met Woodruff and asked what the company would do about it. Woodruff replied that the company was not to blame, and that Hill would have to look to the operator in Cedartown for the damages. That it was competent to make the demand upon the agent of the company on duty at the place from which the telegram was sent, was ruled by this court in *W. U. Tel. Co.* v. *Blanchard*, 68 *Ga.* 299. The agent was not bound to recognize an oral demand. But if he did so, making no objection to it on the ground that it was not in writing, we think it was sufficient. So far from presenting this objection, the agent requested time for investigating the merits of the claim, and after investigating, put the company's refusal to pay, not upon any want of sufficiency in the demand, but upon the non-liability of the company. According to a report which appears in 11 N. E. Rep. 16, the Supreme Court of Indiana ruled, in the case of W. U. Tel. Co. *v.* Yopst, that a waiver of written demand resulted from a refusal to pay, put by the agent on the ground that the contract to send and deliver the telegram was illegal because made on Sunday. Though we find the case reported later, we have been unable to discover it in the Indiana Reports as decided on March 18th, 1887, and reported in the book above referred to. Nevertheless we think the decision upon this question of waiver is sound on principle, and embodied a good exposition of Georgia law, whether it does so of Indiana

law or not.   To reach this holding, it is not necessary to differ from the St. Louis Court of Appeals in Massingale *v.* W. U. Tel. Co., 17 Mo. Ap. 257.   In that case it was held that the oral promise of a general agent of a telegraph company to look into the matter was not a waiver of the condition requiring a demand to be made in writing.   Here the matter was looked into, a decision made and the result communicated.

The court erred in not submitting the case to the jury and in granting a nonsuit.         *Judgment reversed.*