STAMEY v. THE WESTERN UNION TELEGRAPH COMPANY.

1. Where a message, intended for transmission over the lines of a telegraph company, was written upon one 'of the regular blanks prepared and furnished by the company for the use of its customers, and upon the face of the blank, above the space left for the message, the following words were printed in plain type: "Send the following message subject to the terms on back hereof, which are hereby agreed to," and below this space, in still plainer type, were printed the following words and signs: "✍ Read the notice and agreement on'back ✍," the writer of the message and consequently the contemplated sendee was bound by any reasonable rule or regulation printed on the back of the blank.

2. A regulation so printed, and in the following words: " No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender," was reasonable, and the company is not liable to the proposed sendee of such a message because of the failure of the messenger to whom it was intrusted to deliver it at one of the company's transmitting offices, and the company's consequent failure to transmit and deliver to the person addressed. This is so notwithstanding the delivery of messages to such a messenger was usual and customary in the regular line of the company's business, and, according to its usage, it paid its messengers for every message delivered, and " for every message so received to be transmitted." By express stipulation, the messenger was, as to the service he undertook, the agent of the sender and not of the company.

January 8. 1894.

Action for damages. Before Judge EVE. City court of Richmond county. August term, 1893.

The declaration was dismissed on general demurrer.

J. R. LAMAR, for plaintiff.
J. S. & W. T. DAVIDSON, for defendant.

LUMPKIN, Justice.

The declaration in this case claims damages for the non-transmission and non-delivery of a telegram which it is alleged Gooding & Co., of Charleston, S. C., had written on one of the defendant's day telegraphic blanks and handed to a messenger of the defendant, who had just delivered a telegram to them from the plaintiff, to be carried to the office of the defendant in Charleston for transmission to the plaintiff, at the latter's expense, but which message was never in fact delivered by the messenger at the transmitting office of the defendant in Charleston.

The pivotal question is: Was the message delivered to the company for transmission? One of the rules and regulations of the company, printed on the back of the blank upon the face of which the message was written, was in these terms: "No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender." Just above the space left for the written message are the following words in large type: "Send the following message subject to the terms on back hereof, which are hereby agreed to." And at the bottom of this space is the following notice, in larger type: "☞Read the notice and agreement on back☜." The declaration avers that this rule is not obligatory upon the senders of the message, because it was not read by them or known to them.. This position is clearly untenable, for reasonable diligence was all that was necessary to acquaint them with this rule. Therefore, the moment the senders wrote and signed the message on the blank, they became, in legal contemplation, aware of the rule, whether they read it or not, and thereby signified "both their knowledge of it, and their assent

to it." *Hill* v. *Western Union Telegraph Co.*, 85 *Ga.* 425 (1), 428, 429, and cases cited on the latter page. See, also, Gray on Com. by Tel. 52, 53; Scott and Jarnigan on Law of Tel. §149; note in 71 Am. Dec. 466, to case of Camp *v.* Western Union Tel. Co., beginning on page 461. A telegraph company is not subject to the extraordinary limitations and responsibilities imposed by law on common carriers. *Western Union Tel. Co.* v. *Fontaine,* 58 *Ga.* 433; *Same* v. *Blanchard,* 68 *Ga.* 307, and note to same case in 45 Am. Rep. 487, 488. It therefore has the undoubted power to make reasonable rules and regulations regarding the conduct of its business with the public; and the reasonableness of such rules and regulations is a question for the courts to decide. Gray on Com. by Tel. §§13, 29; Scott & Jarn. on Law of Tel. §104; note in 71 Am. Dec. *supra.* This being true, is the rule in controversy reasonable? We think it is. The work performed by the messenger in carrying the message from the office or residence of the sender to the transmitting office of the company forms no part of the transmission of the message by the company, for which latter purpose alone the company makes a charge. There is nothing onerous or one-sided about the rule. It dictates no terms to the sender, and gives no advantage to the company. It is neither obligatory nor arbitrary. In a word, it gives the sender the alternative of delivering his dispatch to the messenger to be delivered by him at the office of the company on the condition prescribed, or of making such delivery either in person or by his own servant. We have been unable to find a direct adjudication upon this rule by any court, and we think this shows, or tends to show, the consensus of public and professional opinion in favor of its reasonableness. The rule is held to be reasonable in the work of Gray on Communication by Telegraph, section 13, top of page 23. Assuming, then, the reasonableness of the

rule, it follows, in the absence of other facts to the contrary, that the message was not delivered to the company, because it was not presented at one of its transmitting offices by the agent of the senders, and was not accepted by the company.

Now, is there any fact in this case, not yet mentioned, which should vary the above conclusion? The plaintiff in error alleges in his declaration that a local usage of the defendant at Charleston authorized its messengers delivering telegrams to receive answers for delivery at the company's office for transmission, for which they were paid by the company two cents for each message so received and delivered (*i. e.* at the company's office), and that such local usage made the messengers the agents of the company to receive messages for transmission and superseded the above recited rule or stipulation. Taking into view all the allegations of the declaration, and the blank attached, the answers referred to as being within the operation of this alleged usage were, presumably, written upon the company's blanks similar to the one in question. We cannot accept as correct the plaintiff's position as to the effect of this alleged usage. If the usage was unknown to the senders of the telegram, they did not act, and could not have acted, on it; and if they had known of such usage, and, nevertheless, entered into a written agreement by which the messenger should act as their agent for the sole purpose of carrying the message to the company's office for transmission, they and the plaintiffs in error were thereby estopped from showing such usage, because custom or usage, while admissible to explain an ambiguous written agreement, is inadmissible if repugnant to or inconsistent with a clear, express agreement. *Grinnell v.* Western Union Tel. Co., 113 Mass. 299, 307; s. c. 18 Am. Rep. 485, 493, and cases there cited. See, also, *Park* v. *Piedmont Ins. Co.,* 48 *Ga.* 601, 606 : *Werner* v. *Footman,* 54

*Ga.* 128, 137; Tilley *v.* County of Cook, 103 U. S. 155, 162; Moran *v.* Prather, 23 Wall. 492, 503; and note to Phœnix Ins. Co. *v.* Munger, 33 Am. St. Rep., on page 368, citing ample authority and saying: "A local usage, inconsistent with an express contract made at the place where such usage prevails, or contradicting its terms, is not a part of such contract, and cannot be given in evidence to contradict or avoid it."

There is nothing in the rule under consideration contrary to public policy. Aside from the reasons already given, others in its favor may be stated:

(1) Messengers of a telegraph company are not sent out from the company's office to solicit telegrams, and, being engaged in a most subordinate work of the company's service, it is to be presumed that they are not invested by the company with the powers of receiving the company's charges or fees for the transmission of telegrams, and that they have no powers of rejecting telegrams offered to them, either for the non-payment in advance of the company's charges for transmission, or for being illegibly written, or for containing matter which would make the company liable in tort or otherwise for transmitting an indecent or immoral telegram, —all of which are powers reserved by law to the company for its protection, and with which it is known to the public, or should be, the receiving agent of the company at its transmitting offices is invested.

(2) The carriage of telegrams from the office or residence of the sender to the transmitting office of the company is not a part of the duty or business of a telegraph company.

(3) Neither the sender nor addressee of a message pays anything for such carriage to the transmitting office of the company.

(4) The liability against which a telegraph company cannot stipulate, as shown by the adjudications of all

courts, is confined to its negligence in connection with the transmission of messages from its transmitting offices, and the delivery of such messages to the sendee; and it has even been held, in Clement *v.* The Western Union Tel. Co., 137 Mass. 463, 466, 467, that there are no principles of public policy which should prevent a telegraph company from stipulating against the negligence of its messenger boys as to the delivery of messages to its patrons.

(5) And the transmission of a message "means its transmission from the office or station at which it is received to the one to which it is sent"; and delivery means "the delivery of it to the person to whom it is addressed." Scott & Jarn. on Law of Tel. §264.

Therefore, delivery to the messenger, without acceptance by the company, should not fix any liability on the company. If delivery to the messenger were delivery to the company, acceptance by the messenger must be held to be acceptance by the company, and this would take from the company its undoubted right to refuse to transmit a message for any one or more of the reasons above stated.

No analogy between such a case as this and that of a life insurance agent can justly be drawn, because none of the reasons which have impelled the courts, in modern decisions, to treat the agent of the insurance company as the agent of the insurer, where a somewhat similar rule or stipulation is printed upon the back of the application or policy of insurance, have any application here. For the reasoning of the courts in such insurance cases, see the opinion of Miller, J., who announced the decision of the court in the case of the Insurance Company *v.* Wilkinson, 13 Wall. 222, 234, 236.

The foregoing disposes of the case, and the question raised as to the measure of damages need not be considered.                              *Judgment affirmed.*