FRANCIS BAKER, RESPONDENT, v. WESTERN UNION TELEGRAPH COMPANY, APPELLANT.*

Kansas City Court of Appeals. May 24, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 764, n. 80; Telegraphs and Telephones, 37Cyc, p. 1692, n. 68.

*Lon R. Owen* for respondent.

*Fred S. Hudson* for appellant.

BLAND, J.—This is an action to recover a penalty provided by the statute, section 10136, Revised Statutes 1919, for the failure of defendant to properly transmit and deliver a telegram. Plaintiff sought to send the telegram from Kansas City, Missouri, to Marceline, Missouri. The case was tried before the court without the aid of a jury, resulting in a judgment against the defendant in the sum of $300 and defendant has appealed.

Plaintiff testified that on September 28, 1924, he was a guest of the Dixon Hotel in Kansas City, Missouri; that for three or four years prior to that time he had frequently stopped at said hotel; that he had sent telegrams through the hotel clerk prior to the one in question; that when the witness desired to send a telegram the clerk would furnish him telegraph blanks on one of which the witness would write the message; that the clerk would either call the defendant or look at his rate book to ascertain the charges and would then inform the witness of the charge, which the witness would pay; that the clerk would then call the "Western Union" for a messenger; that the witness was acquainted with the telephone number of the Western Union and knew that the clerk called its number; that in response to these calls a messenger boy wearing the Western Union uniform would call for the telegram; that during the times he stopped at the hotel he observed others sending telegrams in the same way. There was no telegraph office at the hotel.

About 9:30 of the morning of September 28, 1924, the witness told the clerk that he wished to send two telegrams, the clerk went to his private drawer and handed the witness "Western Union telegraph blanks." The witness wrote two telegrams, one to Marceline and one to Brookfield, Missouri, and handed them to the clerk who secured his rate book and after looking at it, said he would "call the Western

Union to make sure about the rate." The clerk then called the defendant and told it that he had two telegrams, one for Marceline and one for Brookfield, of approximately eight or ten words. The clerk then told the witness the amount of the charge necessary to send them, which the witness paid to the clerk in cash. The amount paid was the usual amount demanded for such messages. The witness then told the clerk that he desired that the messages be sent as soon as possible and the clerk said "he would see to it for me." The witness then left the hotel for about two hours; when he returned he asked the clerk if the telegrams had been sent and the clerk said, "Yes, the messenger boy had called for the telegrams and gotten the money and that they were in the hands of the company." No objection was made to the testimony in reference to what the clerk told the witness. The witness further testified that these two telegrams were handled by the clerk in the same manner that the latter had handled other telegrams sent by him during the three or four years the witness had been stopping at the hotel.

The telegrams were never received at defendant's office in Kansas City for transmission. It was admitted that if the clerk were present at the trial he would testify that on and before September 28, 1924, he was employed as clerk at the Dixon Hotel in Kansas City; that during that time it was the common practice of guests of the hotel to hand telegrams to the clerk for delivery to the telegraph company; that usually when a guest delivered a telegram to the clerk, the clerk would call a bell-boy or other employee of the hotel to take the telegram and deliver it to the telegraph company, or call the Western Union office and that office would send a messenger boy after the message; that the cost of sending the telegram was charged against the account of the guest; that he had no personal recollection of receiving the telegrams in question from plaintiff; that on receipt of messages from the guests the act of delivering them to the telegraph company was one of mere courtesy and accommodation extended to the guest; that there was no arrangement between the hotel and the telegraph company in reference to the matter; that there was no agent of the telegraph company in the hotel authorized to receive messages for transmission.

As a part of the heading of the telegram in controversy, the following was printed: "Send the following message, subject to the terms on back hereof, which are hereby agreed to," and on the back of it appears the following:

"5. No responsibility attached to the company concerning messages until the same are accepted at one of its transmitting offices; and if a message is sent to such by one of the company's messengers, he acts for that purpose as the agent of the sender."

It is insisted by the defendant that the court should have sustained its demurrer to the evidence. There was no other declaration

of law or finding of fact requested. In this connection it is claimed that the hotel clerk was not the agent of the defendant and that the agreement contained on the back of the telegram was a reasonable and binding one. There is no contention made that the telegram was of such a character that defendant had the right to refuse to transmit it. We need not pass upon the question as to whether there was sufficient testimony upon which to base a recovery on the theory that the hotel clerk was the agent of the defendant for the purpose of receiving the message as we think there was evidence tending to show liability on the part of the defendant on the ground that the message was delivered to one of its agents, to-wit, a messenger boy.

The testimony of plaintiff that the clerk told him that a messenger boy had called for the telegram and had received the money, was not objected to at the trial and we do not understand defendant to contend that we are not permitted to consider this as some evidence of what occurred after the delivery of the message to the clerk by plaintiff and his leaving the hotel. So we assume, for the purpose of the case, that this testimony constituted evidence. We think that taking the testimony and all reasonable inferences that may be drawn therefrom in favor of plaintiff, which we are required to do in considering a demurrer to plaintiff's evidence, it is fairly shown that plaintiff delivered the telegram in question to the clerk, together with the required charge for sending the same, and that the clerk called up the defendant and it sent a messenger boy for the purpose of procuring the message that was to be transmitted, together with the charge for sending it, and that the boy procured the message and the money. Under such circumstances we think there is no question but that the messenger boy was the agent of the defendant notwithstanding the provision on the back of the telegram, and if he failed to deliver the message at defendant's office, as its testimony tends to show, his failure was the failure of the defendant for which it is liable. [Alexander v. Telegraph Co., 158 N. C. 473; Will v. Postal Telegraph Cable Co., 37 N. Y. Supp. 933; Keeting v. Western Union Tel. Co., 185 S. W. 1163, 1164.]

The case of Stamey v. Western Union Tel. Co., 92 Ga. 613, is not in point as in that case there was no evidence showing that the messenger boy who received the message was authorized by the company to receive it. The same may be said of the case of Ayers v. Western Union Tel. Co., 72 N. Y. Supp. 634. In both of these cases the messenger was merely authorized to deliver a message that had been sent to the sender of the message in controversy and was not authorized to receive an answering message that was voluntarily delivered to the messenger by the person receiving the original message. In both cases the messenger was employed to deliver messages only. In the latter case there was no custom of the company shown allowing its messengers to receive telegrams and there was no payment

made to the messenger by the sender of the telegram. We have examined the case of Collotta v. Western Union Tel. Co., 83 Southern 401 (Miss.), cited by the defendant. The opinion in that case does not disclose that the company sent a messenger for the message and the case is not in point. The case of Alexander v. Tel. Co., supra, is directly in point. There the company was called over the telephone and asked to send a messenger for an answer message and soon thereafter a boy came for the message. The undisputed evidence showed that the message was never received at the office of the company. The court in passing upon a contention similar to the one made by the defendant here, stated, l. c. 479, 480—

"It is well understood here and in other jurisdictions that a telegraph company may make reasonable stipulations restrictive of its liability and to the extent that they are not relieved thereby from the obligations of diligence superimposed by law in the performance of their duties. [Sherrill v. Telegraph Co., 109 N. C. 527; Thompson v. Telegraph Co., 107 N. C. 449.] And there is authority to the effect that the stipulations in question here appearing on the blank on which the sender writes the message shall bind the sender as a part of the contract. [Stamey v. Western Union, 92 Ga. 613.] If this, however, may be allowed to prevail under ordinary conditions, it is qualified, as a general proposition, by decisions which hold that if a messenger is instructed by the company to procure an answer, for this last purpose the messenger will be considered the company's agent and the stipulation referred to is not controlling. And this limitation should apply, we think, when in response to a specific request the company sends a messenger for the express purpose of taking a message. [Will v. Telegraph Co., App. Div. N. Y. vol. 3, 22; Ayers v. Telegraph Co., App. Div. N. Y. 149; Jones on Telegraph and Telephone Companies, sec. 408; 37 Cyc., p. 1692, note 68.]"

From the cases cited, it would appear to be established that a mere delivery of a telegram to a messenger, in view of the aforementioned provision on the back of the telegraph blank, would constitute the messenger the agent of the person so delivering the telegram to him. This is supported by the cases of Stamey v. Western Union Tel. Co., supra; Ayers v. Telegraph Co., supra; Collotta v. Telegraph Co., supra; but where the company directs a delivering messenger to receive an answer message or sends its messenger after a telegram upon a request by the sender, the company then constitutes the messenger boy its agent and is liable for his failure to deliver the message at the company's office. This is supported by the cases of Alexander v. Tel. Co., supra; Will v. Tel. Co., supra, and Keeting v. Western Union Tel. Co., supra.

The judgment is affirmed. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.