VIRGINIA C. JOHNSON BENNETT, APPELLANT, v. THE ROYAL UNION MUTUAL LIFE INS. CO., ET AL., RESPONDENTS.—112 S. W. (2d) 134.

Kansas City Court of Appeals. January 10, 1938.

*Fred F. Wesner* and *F. M. Ross* for appellant.

*Montgomery, Martin & Montgomery* for respondents.

REYNOLDS, J.—This is an action on a life insurance policy, the petition wherein was filed in the circuit court of Pettis county. The cause was tried in that court; and, from the judgment rendered in that court, this appeal is prosecuted.

The policy—a twenty-payment, life insurance policy for $2,500— was issued on the life of Robert Johnson, the deceased husband of the plaintiff, on March 10, 1917, in consideration of the payment of annual premiums of $73.63 each agreed to be paid on March 10, of each year. The policy was issued by the Royal Union Mutual Life Insurance Company (hereinafter referred to as the mutual company) af-

terwards merged with the State Life Insurance Company, forming the Royal Union Life Insurance Company (hereinafter referred to as the union company), which latter company reinsured and took over and assumed all of the liabilities of the policyholders of the said mutual company, including the liabilities under the policy sued upon herein. Thereafter, the union company, by proceedings in the United States District Court in the Central Division of the Southern District of Iowa, was placed in the hands of receivers appointed by that court. Thereafter, the receiver, under the orders of that court, entered into a reinsurance agreement with the Lincoln Life Insurance Company, the defendant herein, by the terms of which such defendant reinsured and assumed all of the life insurance policies of said union company, outstanding and in force on June 3, 1933, including the policy sued upon if in force on that date.

The defendant, Lincoln National Life Insurance Company, expressly denies that such policy was in force at that time or that it assumed any liability on account thereof. Whether it was in force or not and whether the defendant assumed any liability on account thereof are matters to be determined herein upon the record.

The policy contains the following provisions in regard to premium payments:

"Premium Payments: Each premium is due and payable at noon on the dates specified, at the Home Office of the Company; it may be paid elsewhere only to an authorized collector in exchange for the Company's receipt signed by its President or Secretary and countersigned by said collector. Failure to pay any premiums or any note taken therefor, when due and payable, shall cause this policy to cease and determine . . .

"Grace in Payment of Premiums: After this policy shall have been in force one year, thirty-one days of grace shall be allowed in the payment of premiums—No agent or collector can extend the time for payment of premiums nor make any binding agreement in relation thereto."

The table of loan values and surrender values contained in the policy shows that, in the sixteenth policy year (which began March 10, 1932), the cash loan and full reserve value of the policy was $790.00.

The plaintiff's evidence shows that Guy W. Peabody was the soliciting agent of the mutual company and had taken the application for the policy in suit and collected the premium thereon; that he continued thereafter as soliciting agent for the union company, after it took over the business of the mutual company, and presumably became such agent for the defendant, Lincoln National Life Insurance company, when it took over the union company; that all premium payments on the policy made after the delivery of the policy and the

premium then due thereon was collected were made through him; that, at the time a premium or part thereof was paid by the insured, it was paid to Peabody, who issued his personal receipt therefor to the insured, which was followed by a receipt from the company.

There is no evidence to show that Peabody, in addition to being a soliciting agent for the companies he represented, was their collecting agent, further than the inferences, if any, afforded from the fact that he did, from time to time, collect the annual premiums on the particular policy in question at the dates they became due or within the year for which each was due with the knowledge of his principal and that his act in so doing was approved by it. The policy sued upon provided that the premiums should be paid at the home office of the company.

The transactions about which the controversy in this case centers began around the time the premium due March 10, 1932, fell due. At this time, in addition to the premium then due, it was required that the premiums for the years 1933, 1934, 1935, and 1936 should be paid as they became due before the policy might mature as a twenty-year policy.

At that time, the policy had against it a loan previously executed by the insured in the amount of $162.00 with accrued interest. There was a balance owing on the premium of March 10, 1931; and the entire premium due March 10, 1932, was unpaid. As shown by a loan agreement executed by the insured dated March 28, 1932, the insured negotiated a new loan against the policy in the amount of $789.80, which was sufficient to cover and discharge the old indebtedness against the policy, the amounts owing on the 1931 and 1932 premiums, all interest past due, and interest on the new indebtedness at —% to March 10, 1933, and for payment in cash to the insured of the sum of $402.55. In consummation of the loan, the company delivered to the insured its check for $402.55, payable to the order of the insured, which check was thereafter endorsed by the insured to Peabody, for which Peabody executed and delivered to the insured his note dated April 6, 1932, for $402.55, payable one year after date with 8% compound interest. The check thus endorsed by the insured was paid by the union company in the usual course. This loan so negotiated, except for a balance of twenty cents, entirely exhausted the cash value of the policy. In the amended answer filed by it in this action, the defendant tendered to the plaintiff such amount.

As to the circumstances which prompted the insured, the plaintiff's husband, to negotiate this loan, the plaintiff testified that Peabody, the company's soliciting agent, had called on her and her husband and had told them that "insurance companies were in pretty bad shape everywhere" and that "some had already stopped issuing cash values;" that "the insurance company was kind in—not just

exactly settled" and that "He said they were going into the hands of receiver or something;" that it was best to borrow on the policy; that they could borrow up to the cash value; and that they would then have money with which to pay the four premiums yet to become due for the 1933, 1934, 1935, and 1936 and continue the policy in force and mature it. The insured thereupon applied for a loan amounting to the full cash value of the policy. The application therefor was made up for him by Peabody, and the loan was allowed, and the loan agreement was made March 28, 1932. The policy was assigned by the insured and delivered to the Union company as security for the loan.

It was contended by the plaintiff upon the trial that the check was endorsed over to Peabody in payment in full of the premiums thereafter to become due, respectively for the years 1933, 1934, 1935, and 1936, the payment of which as they became due was required to keep the policy in force and bring it to maturity, and that any balance after the ascertainment of the amount required for the payment of such premiums was to be returned by Peabody to the insured and that the note was given to the insured merely for the purpose of evidencing the receipt of the payment of such premiums by the insured to Peabody. Upon the trial, the plaintiff was permitted to testify to such understanding over the objections of the defendant that, by such testimony, she was attempting to vary by parol the terms of the written contract covering the transaction.

Her testimony upon the trial in her own language is as follows: "When he—'Peabody'—came out, he said, 'the insurance companies were all kinda bad and some that were paying cash values had stopped paying cash values,' and he advised us, the condition we were financially and everything, it would be best to get our money out of the insurance company, 'to borrow this to have enough to pay our premiums up for the remaining four years,' that we owed on it and the cash value that we put in he would borrow from the company and have paid the premium up for the four years and—He told us to take our money and pay our four years in advance to the company and we had him write us up this loan. . . . He fixed the papers for us to get the loan. . . . Then it was just a matter of a short time and the check came back. I don't think much more than ten days or two weeks. It came to Mr. Peabody and he brought it out to my house, to my husband; it was made out to my husband. I saw the check." It was for "$402.55. My husband endorsed the check and turned it over to Mr. Peabody that very night to pay the four years' premium. That certainly was done in my presence, right there. Mr. Peabody brought the check out, handed to my husband, my husband andorsed it and handed it back to Mr. Peabody. I said something about the receipt and Mr. Peabody brought out a note already fixed up to sign to give us to show in case anything should happen—. He had a note with him to give us for our money. He gave us a note, yes."

"He said about the insurance companies and he didn't know how much the premiums were going to be—whether the same when it went over with this old company. He said they was going into the hands of receiver or something. I don't know what he meant, but he didn't know just how the policy was going to be; he did say he didn't know whether we would get as much insurance and he would have to find out what the premiums were going to be when they got straightened out. We were supposed to get back what didn't go on the premium." She asked him for the amount back that did not go on the premium. "I asked him several times about the insurance and how it was straightened up and everything.—he always said the insurance was straightened up all right and he didn't know exactly and he always gave me a little deposit; after my husband died why he gave me a few dollars and told me he would let me know and kept putting me off." After they gave him the check for $402.55, she and her husband, in order to check up with him to see whether he had paid the premiums as he was supposed to do, asked about them and "he said, 'they were taken care of.'"

". . . along in '33, when the premium came due the next year, when we first said something to him about it," he "said the insurance was taken care of. Well, he said the premiums were paid; he said he was taking care of the insurance and they were paid." The witness asked about it again in January, 1934; and "He said 'the insurance was paid, the insurance was all right and paid.'" The middle of March, 1934, "He said the insurance was paid, he always did tell me the insurance was paid, but he never did tell how much the premiums were I had to pay or how much I had coming back out of the check. When in short circumstances, we asked for the money coming back; he couldn't tell how much we had coming back. We asked him for some money." He paid them some. "I think he paid us back sixty or seventy dollars.—In March, 1934, we went out to Mr. Peabody's house and talked.—We went out because we wanted to see Mr. Peabody and find out if he ever paid the premiums and what we had coming to us and went out for it." He told "us the insurance was all paid and everything was all right—" After her husband's death—"He gave me a little money and told me just to be patient."

At the time of the trial, the policy sued upon was in the possession of the defendant, being held by it as security for the loan under the agreement dated March 28, 1932. It was, however, produced on the trial, and, upon the trial, was introduced in evidence by the plaintiff as from the possession of the defendant.

The insured, Robert Johnson, died on May 25, 1934. The defendant, by letter of June 19, 1934, addressed to the plaintiff (the beneficiary) at Sedalia, Missouri, acknowledged receipt of the notice of the death of the insured on May 25, 1934, and by the same letter advised the plaintiff that the policy had lapsed by reason of nonpay-

ment of the premium which fell due March 10, 1933, and denied that the insurance was in force at the death of the insured in May, 1934. It further stated that, at the time that the premium of March 10, 1933, fell due, there was a maximum loan standing against the policy and that there was no equity left for the purpose of continuing the insurance in force.

Again, by letter of June 30, 1934, it advised the plaintiff that the policy was not in force in any amount at the time of Mr. Johnson's death and that the entire cash surrender value of the policy was used up at the time that it lapsed.

The evidence does not show that the defendant or its predecessor, the union company, ever received payment of the premiums falling due March 10, 1933, and March 10, 1934, unless the transaction between the insured in which the insured endorsed over the loan check for $402.55, amounted to a payment of such premiums to the union company and of the later premiums falling due March 10, 1935, and March 10, 1936. If so, it must have been by reason of the fact that Peabody, at the time of the delivery of the said check to him, was the agent of the union company with authority to receive said check at such time in payment of said premiums in full and in advance for such years and that he did as such agent receive it in payment of such premiums.

At the conclusion of the plaintiff's evidence, the defendant requested an instruction in the nature of a demurrer to the case as made by the plaintiff upon the evidence, which instruction was by the court granted; and the jury was directed to return a verdict for the defendant. The verdict being so returned by the jury, judgment was duly entered thereon in favor of the defendant, from which judgment the plaintiff, after an unsuccessful motion for new trial and an unsuccessful motion in arrest of judgment, prosecutes this appeal.

The mutual company was dismissed by the plaintiff in its reply.

#### OPINION.

1. The plaintiff complains of the action of the trial court in giving the defendant's requested instruction in the nature of a demurrer to the evidence at the close of her case, directing a verdict in the defendant's favor.

She argues that the evidence introduced upon her case made a submissible case, regard being had to the rule which requires that, upon a demurrer, it be considered in its most favorable light for her and that all of such evidence, together with the facts pleaded by her in her petition and verified reply, shall be taken as true.

It is true that, upon a demurrer, the evidence introduced by the plaintiff, together with all reasonable inferences springing therefrom, is to be taken as true. [Kuhlman v. Water, Light & Transit Co., 307 Mo. 607, 271 S. W. 788; Baker v. Western Union Tel. Co., 221 Mo. App. 616, 287 S. W. 806.]

Ordinarily, in a suit on an insurance policy where the policy has been delivered to the insured and is in his possession at the time of his death or the possession of his beneficiary thereafter, all that is necessary to make a *prima facie* case in a suit thereon by the beneficiary is the introduction of the policy in evidence upon the trial and proof of the death of the insured and of due notice thereof to the defendant. [Lafferty v. Kansas City Casualty Co., 287 Mo. 555, 229 S. W. 750; Harris v. Security Life Ins. Co., 248 Mo. 304, 154 S. W. 68; Acuff v. New York Life Ins. Co., 210 Mo. App. 356, 239 S. W. 551; Gaines v. Berkshire Life Ins. Co., 228 Mo. App. 319, 68 S. W. (2d) 905.]

It is contended by the defendant, however, that the policy in question was not in the possession of the plaintiff (the beneficiary therein) at the time of the trial or in the possession of the insured at the time of his death but that it was in its possession as successor to the union company under the assignment to the union company securing the loan made by the union company thereon to the insured in March, 1932, in the sum of $789.80 and that it had been in the possession of the union company and the defendant as its successor since that date and that it was produced by it at the trial upon request of the plaintiff to be by her introduced in evidence as from its possession. It contends that the loan thereon exhausted the cash value of the policy at the time that it was made, less twenty cents, and that no further premiums were paid thereon subsequent to the loan and that it lapsed by reason of the nonpayment of the premium due thereon in March, 1933, and was not in force on June 3, 1933, and therefore was not included among the policies assumed by it. It contends also that it was not in force at the time of the death of the insured in May, 1934, by reason of the nonpayment of premiums thereon. The twenty cents left in the hands of the defendant were by the terms of the policy available for the purchase of nonparticipating, paid-up insurance; but, it not having been so used, the defendant tendered the same to the plaintiff, both prior to and upon the trial.

2. The defendant contends that, under the circumstances, the burden is upon the plaintiff—in addition to the introduction of the policy and the proof of death of the insured and the notice thereof to the defendant—to show that all premiums on said policy required to be paid to maintain the same in force to and including June 3, 1933, the date on which it was required to be in force in order that any liability thereon be assumed by the defendant, and to and including May 25, 1934, the date of the death of the insured, were paid in order to make a *prima facie* or submissible case.

Whether or not such contention is well made under the particular circumstances existing in this case is not necessarily to be determined, for the reason that the plaintiff voluntarily upon the trial as-

sumed the burden of making such proof. From her evidence, it is fairly to be presumed that, if the premiums falling due respectively for the years 1933, 1934, 1935, and 1936 were not paid at the time and in the manner claimed by her, they were not paid at all.

From her testimony, regarded in its most favorable light for her (passing over the defendants' objections to such testimony), it appears that the check received by the insured from the union company in the sum of $402.55, of date April 4, 1932, as the balance on the lona of $789.80 made by the union company to him at that time, was, upon its receipt in April, 1932, endorsed by her husband and delivered to Peabody, the soliciting agent by whom the application for the policy in question was taken and through whom all premium payments thereon had been previously made, as payment in advance of the annual premiums on said policy for the years 1933, 1934, 1935, and 1936, with the understanding that the surplus amount of such check above the requirements of such premium payments was to be repaid to the insured by Peabody. At the time, Peabody was the soliciting agent for the union company. The question in this case is whether Peabody as such agent had the right to collect such premiums at the time, in advance of their due dates.

The evidence does not show that the union company ever knew of this payment by the insured to Peabody or that it ever received such payment from Peabody or that Peabody ever paid such premiums to it. This transaction was one year and over before the defendant, Lincoln National Life Insurance Company, took over the union company and was a transaction with which it was in no manner connected and in which it was in no manner interested at that time; and, hence, the question as to whether or not Peabody was acting as agent for such defendant at such time in such alleged transaction does not arise herein. Its liability in this action depends on whether the alleged payment thus made by the insured to Peabody for the premiums for such years constituted a payment of such premiums; and whether it did constitute a payment of such premiums depends on whether Peabody at the time had any authority from the union company to receive and accept the same, so that it became bound by his act in so doing, and whether such act was within the real or apparent scope of his employment. If the union company was bound thereby, then its liability under the policy became established for the full value thereof upon its maturity; and its liability thus established was among the liabilities the discharge of which was assumed by the defendant, Lincoln National Life Insurance Company, under its agreement with the receivers of the union company upon the taking over of the assets and liabilities of that company.

One who deals with an agent is by the mere fact of agency put on an inquiry to discover the scope of the agent's authority and to ascertain that he is authorized to do the act proposed. [Gibson v.

Texas Prudential Ins. Co., 229 Mo. App. 867, 86 S. W. (2d) 400; Johnson v. Hurley, 115 Mo. 513, 22 S. W. 492; 1 Mechem on Agency (2 Ed.), arts. 276 to 289; 2 C. J., art. 204, pp. 562, 563.]

3. It is contended by the defendant that it is not shown in the record that Peabody had any authority to accept such check in payment of said premiums in advance of their respective due dates or to bind the union company and this defendant through it by his act in doing so or that such act was within the scope of his employment and that the burden was upon the plaintiff to make such a showing.

That it is true that the burden was upon the plaintiff to make such showing, we have no doubt. [Parrott v. Guarantee Fund Life Ass'n (Mo. App.), 224 S. W. 77; 32 C. J., p. 1198.]

No express authority to Peabody to collect the premiums on the policy in suit in advance appears from the record. It is expressly provided in the policy that premiums should be paid at the home office of the company or to some authorized collector in exchange for the company's receipt signed by its president and secretary and countersigned by the collector. It does not appear that Peabody was ever possessed of or delivered any official receipts. Whenever a premium was paid to him, he gave his personal receipt therefor and later an official receipt was forwarded from the home office to the insured, presumably upon the receipt of the premium through Peabody at such office.

It follows, therefore, that the plaintiff must rely, in this case, upon the agent Peabody's apparent authority—that is, the authority with which the union company, by its acts and course of conduct and dealing with Peabody and the public, held out Peabody to have.

4. It may be well at this point to bear in mind that the record shows that the policy in question was issued to the insured by the mutual company on March 10, 1917, upon the written application of the insured therefor procured by Peabody as soliciting agent for said company, and was procured upon his solicitation and that, upon the delivery of said policy, Peabody received from the insured the premium for the first year. He continued to receive such premiums annually and forwarded them to the mutual company, which company forwarded its official receipt to the insured from its home office until the year 1924, when it was merged into the union company, which latter company reinsured, took over, and assumed all of the liabilities of the mutual company to policyholders, including liability under the policy in question. Peabody thereafter continued to receive the annual premiums due on said policy for each year as each became due or within the year each became due, until fifteen annual premiums from the issuance of the policy had been paid, and forwarded them to the company, which company forwarded its official receipt to the insured from its home office. It appears that

some of such premiums were not received by Peabody in full at the times that they became due but that he accepted the receipt thereof in installments during the year in which each became due. In March, 1932, a loan was made to the insured by the union company upon the policy in question; and an assignment of said policy by the insured was taken as security. The premium for that year was taken care of in that transaction. The policy in question is a twenty-year-payment policy; and, after the premium for 1932 was taken care of, there remained the premiums for the years 1933, 1934, 1935, and 1936 required to be paid yearly as each became due in order to bring the policy to maturity. After said loan was made, the union company was placed in the hands of receivers who afterward, on November 29, 1933, made and entered into a reinsurance agreement with this defendant, Lincoln National Life Insurance Company, under the terms of which this defendant reinsured and assumed all of the life insurance policies of the said union company by their terms outstanding and in force on June 3, 1933.

5. It appears from the record that the policy in question and the loan thereon which its assignment secured came into the possession of the defendant as assets derived from the union company under such agreement.

Whether said policy was in force on June 3, 1933, the date it was required to be in force to bring it within the obligations assumed by the defendant, Lincoln National Life Insurance Company, and on May 25, 1934, the date of the death of the insured, is a question upon the final solution of which the disposition of this case ultimately depends. If in force on June 3, 1933, it could only be so by reason of the alleged payment in advance of the premium thereon falling due March 10, 1933, made by the insured to Peabody in April, 1932 (along with the other premiums due in March, 1934, 1935, and 1936); and, if in force on May 25, 1934, only by reason of the payment in advance of the further premium due March 10, 1934, alleged to have been made to Peabody in April, 1932 (along with the premiums falling due March 10, 1933, 1935, and 1936). If not in force June 3, 1933, of course the defendant is not liable. If in force on that date and not in force May 25, 1934, the defendant is not liable.

6. Whether such payment to Peabody was a payment of such premiums depends, as hereinbefore stated, upon the authority of Peabody as the agent of the union company to receive it. If he had no such authority from the union company, it did not amount to a payment of such premiums; and the defendant can not be held liable. Peabody's agency is made to depend wholly on the course of conduct between himself and the union company by which the union company must have held him out as its agent with such authority.

7. The most that can be said to appear from the record is that he

was held out by the union company as its agent in the collection of the annual premiums upon the policy as they became due or within the year each became due. His repeated receipt of such premiums was known to the union company and his act in accepting and forwarding the same was ratified, adopted, and confirmed by it. There is a sufficient showing of his agency in such behalf.

However, it is not shown that he had ever, prior to April, 1932, received any premium in advance and prior to the time it fell due, so that it can not be said that, by any course of conduct toward him or with him, the union company held him out as its agent to receive the premiums in advance of their maturity. Each of the premiums which had been received by him, in the receipt of which his action was ratified by the union company, was received by him on the maturity of such premium or the date upon which it fell due or within the year for which it became due. An agency for the receipt or collection of annual premiums on an insurance policy as they fall due falls far short of an agency for the receipt or collection of premiums in advance of their maturity, as in this case from one to four years.

Where previous acts done by the agent with the acquiescence of his principal are relied upon to establish apparent authority of the agent to do the act in question, the prior acts shown in evidence must be of the same kind and character as the act with which it is sought to charge the principal. [Schaeffer Bros. & Powell Mfg. Co. v. Williams (Mo. App.), 52 S. W. (2d) 457, 1. c. 459; 2 C. J. S., art. 96, p. 1312; Cummings v. Hurd, 49 Mo. App. 139; Sharp v. Knox, 48 Mo. App. 169; Haubelt Bros. v. Rea & Page Mill Co., 77 Mo. App. 672, 679; 2 C. J. 442-444.]

An agent's authority to make collections for his principal will not be extended by implication so as to justify the collection by him of money before it is due, particularly a considerable time before the obligation matures, in the absence of some known course of dealing of such a character that reliance may be placed thereon by the obligor. [Brants v. Runnels (Mo. App.), 26 S. W. (2d) 1004; McDonald v. Smith, 201 Mo. 78, 206 S. W. 591; Paxston v. Gillam-Jackson Loan & Trust Co., 221 Mo. App. 1101, 297 S. W. 119; City National Bank v. Goodloe-McClelland Commission Co., 93 Mo. App. 123; Bost v. McFarland, 229 Mo. App. 776, 81 S. W. (2d) 350.]

9. The record in this case shows that Peabody was a mere soliciting agent with authority only to fill out and take applications for insurance and to deliver policies when issued on such applications and to collect premiums thereon annually as they became due. It does not show any authority in him to make an insurance contract or to issue a policy; neither does it show any authority in him to change, vary, or modify in any manner any insurance contract after the issuance and delivery thereof. [Reed v. Prudential Life Ins.

1040

Co., 229 Mo. App. 90, 73 S. W. (2d) 1027; Rhodus v. Kansas City
Life Ins. Co., 156 Mo. App. 281, 137 S. W. 907; Patterson v. Pru-
dential Ins. Co. of America (Mo. App.), 23 S. W. (2d) 198; Laster
v. American Nat. Life Ins. Co. (Tenn.), 98 S. W. (2d) 1068; Byrne
v. Prudential Ins. Co. of America (Mo.), 88 S. W. (2d) 344.]

He had no authority, so far as is shown by the record, to bind
his principal by any act done by him subsequent to the delivery of
the policy further than the collection of the annual premiums there-
on as they became due or within the year each became due. [Clark
v. John Hancock Mut. Life Ins. Co., 230 Mo. App. 593, 58 S. W. (2d)
484; 32 C. J., arts. 590 & 591, p. 1331.]

In the collection of premiums, he could not bind the defendant
by the collection of such premiums in advance of the dates on which
they fell due, in the absence of previous authority so to do, unless
he paid them over to the company and they were accepted by it.
The record does not show that he was previously so authorized. To
hold that, as a mere soliciting or collecting agent, he had authority
to collect premiums upon the policy in question for the union com-
pany years in advance of their due dates without the knowledge and
consent of such company and without previous authority so to do
and without such being within the apparent scope of his authority
merely because he had the right to collect premiums annually when
falling due would be a dangerous doctrine. The insurance com-
pany could not with any degree of certainty ascertain what policies
it had in force, and it might face unknown liabilities on policies
lapsed on its books prior to the making of any claim thereon. [Krug
Park Amusement Co. v. New York Ins. Co. (Neb.), 261 N. W. 363.]

10. Authority to collect or receive payments is to be exercised in
the manner usual and reasonably necessary to the fulfillment of
the contract of agency, and acts which are not of that description
are not comprised within the powers of the agent in the absence of
express or apparent authority for their performance. [2 C. J. S.,
art. 107, p. 1281.]

The collection is to be made at the time and in such manner, if
any, as the agency agreement specifically provides or, if such time
and manner be not particularly prescribed, then in the usual and
ordinary manner. [2 C. J. S., supra.]

The power, when existing, exists with reference to some particu-
lar, existing obligation, written or other wise; and it can not be ex-
ercised in such a way as to modify that obligation or the right of the
principal under it, except with authority from the holder so to do.
(2 C. J. S., supra.)

No authority will be implied to receive payments which do not,
in the time or the manner in which they are made, conform to the
terms of the contract creating the obligation to pay. Thus, au-
thority to receive payment of an obligation does not authorize an

agent to receive it before it is due. This rule is not an absolute or arbitrary one. An agent is allowed to collect in advance in cases and under circumstances where the reason of the rule above stated does not operate, as where he receives payment for a short while only before maturity and under such circumstances that the terms of his principal's contract are not altered or affected and in cases where express authority is given the agent by the principal or where such authority is to be implied from the course of practice on the part of the agent with the approval of the principal. [2 C. J. S., art. 107, p. 1281, *supra*.]

11. No express authority in Peabody is shown in this case to collect four years' premiums on the policy in question in advance of the dates fixed by the policy for the payment of such premiums. Neither is such authority to be presumed from any course of conduct or dealing on the part of his principal with Peabody shown.

Peabody's authority in this case for the collection of the premiums in question was to collect them annually, as they fell due at the times fixed by the policy and not in a lump sum, for years in advance. This was not extended by any course of practice upon Peabody's part, known to or approved by his principal. The usual manner for the fulfillment of his contract as agent was for him to receive such premiums only as each became due, and he was not authorized to fulfill it in any other manner.

The time, manner, and place of payment of the premiums of the policy in question were fixed by the terms of the policy. [32 C. J., art. 328, p. 1195.]

Peabody had no power, so far as is shown by the record, to modify the terms of the contract of his principal with the insured by accepting or collecting the premiums thereon in advance, different from the manner provided therein. He had no right to collect four years' premiums in a lump sum, in advance of the dates fixed in the policy for their respective payments. He was not lawfully authorized to receive or collect such premiums in that manner. Payment by the insured to him of such premiums in a lump sum for four years in advance did not amount to a payment of the premiums so that the defendant was bound thereby. [32 C. J., pp. 1198, 1199.]

As a mere soliciting agent, he could not thus modify and vary the terms of the policy which had been issued by his principal and had been in force for sixteen years. [Clark v. John Hancock Mut. Life Ins. Co., *supra*; Gibson v. Texas Prudential Ins. Co., *supra*; 2 C. J. S., art. 104, p. 1244.] Neither was he authorized, so far as is shown by the record, to do so by his contract of agency, which called for the collection of such premiums in the usual course.

12. True, Peabody did, through several years, receive the annual premiums on the policy in question in installments; but such installment payments were made and received within the years for which.

they were due and with the knowledge of his principal. An agent empowered to collect an entire obligation may collect the same in installments without varying the terms of his principal's contract, notwithstanding that such contract may contemplate that the obligation be paid in full at a fixed date, where an authority to collect in such manner is not prohibited; for the power to collect the entire obligation as a whole includes the power to collect it in installments. [2 C. J. S., art. 107, p. 1282.]

Moreover, such acts of Peabody in collecting such premiums in installments at times are not of the kind or character as that with which it is sought to charge the union company and the defendant through it in this case. The power to collect an entire annual premium in installments after it falls due falls far short of authority to collect annual premiums for years in advance of the dates fixed by the terms of the policy at which they became due.

13. The scope of authority of a soliciting agent is limited by his contract and by the course of conduct of his principal in holding him out to the public as having authority to do certain acts as being within the scope of his employment.

It is the uniform rule that, absent special circumstances, an agent authorized to collect an indebtedness has no authority to receive payment before the maturity thereof. [2 C. J. S., art. 107, p. 1281, *supra*.]

In volume 2 of American Jurisprudence, art. 171, pages 136 and 137, it is said:

"It is the general rule that an agent's authority to make collections for his principal may not ordinarily be extended by implication so as to justify his collecting money before it is due, particularly a considerable time before the obligation matures,—at least in the absence of some known course of dealing of such a character that reliance may properly be placed thereon by the obligor as indicating that the agent is actually authorized so to collect, or of other circumstances giving the appearance of actual authority or a holding out of ostensible authority.—In accordance with the general rule as above stated, it has been frequently held that, notwithstanding express authority to collect interest due on a mortgage or note, and perhaps the principal, an agent so authorized has no implied or apparent authority to collect payments on the principal a considerable time before they are due, and accordingly a debtor who makes such payments without satisfying himself with regard to the agent's authority to receive them for the creditor makes them at his peril."

The rule thus announced is supported by the following cases, determined by the appellate courts of this State: Brants et al. v. Runnels, *supra*; McDonald v. Smith, *supra*; Paxston v. Gillam-Jackson Loan & Trust Co., *supra*; City National Bank v. Goodloe-McClelland Commission Co., *supra*; Bost v. McFarland, *supra*.

There is no reason apparent why the rule announced is not applicable to soliciting or collection agents of insurance companies as well as to other collecting agents.

In 32 C. J., art. 135, pp. 1067 and 1068, it is said:

"A soliciting agent is merely a special agent, and as a general rule, has authority only to solicit insurance, submit applications therefor to the company, and perform such acts as are incident to that power. He may bind the company by agreements and representations properly made in connection with the application for insurance, but ordinarily has no authority to bind it by attempting acts or contracts in its behalf, relating not to the taking of the application, but to the subsequent contract of insurance, or to other matters not connected with the application and not within the real or apparent scope of his authority—"

In Missouri, in addition to the powers mentioned in *Corpus Juris,* he ordinarily has the power of delivering the policy when issued by the company and collecting the first premium thereon; but, with all such, he does not become a general agent of the company with authority to make contracts of insurance and to issue policies or to modify and change the contract as embodied in the policy or to waive the terms and conditions thereof.

14. The plaintiff urges and relies upon Section 5733 of the Revision of 1929 as making Peabody (in this case the soliciting agent of the company) the general agent of the company with unlimited authority in the collection of premiums on the policy, covering the collection of the four years' premiums in advance. Such section is as follows:

"No life insurance company doing business in this state, and no officer, director, or agent thereof, shall issue or circulate, or cause or permit to be issued or circulated, any estimate, illustration, circular or statement of any sort misrepresenting the terms of any policy issued by it or the benefits or advantages promised thereby, or the dividends or shares of surplus to be received thereon, or shall use any name or title of any policy or class of policies misrepresenting the true nature thereof. Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured, nor shall any life insurance company or agent sell, discount or otherwise dispose of any note or notes taken for payment of life insurance premium or premiums, before delivering to the applicant, in person, the policy for which said note or notes shall have been given."

The special provision thereof relied upon is that providing, "Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his bene-

ficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured.''

A ''general agent'' is ordinarily understood to be one who is authorized to accept risks, to agree upon and settle the terms of the insurance contracts, to issue policies by filling out blank instruments furnished him for that purpose, and to renew policies already issued, as distinguished from a ''soliciting agent'' who merely procures applications, forwards them to some other officers of the company by whom the policies are issued, collects the premiums, and delivers the policies. [32 C. J., art. 142, pp. 1065 and 1066.]

A general agent has the power to make and issue contracts of insurance and, by agreement with the insureds, can change, modify, and vary the terms of such contracts and policies after the delivery thereof. A soliciting agent has no such power.

A person may be a general agent as to his powers although he represents the company in a restricted territory, in which latter aspect he is ordinarily known only as a local agent. [32 C. J., art. 142, p. 1066, *supra.*]

A mere soliciting agent ordinarily has no authority, after the issuance of a policy, to waive or modify any of the terms thereof, although an exception to this rule may arise from the nature and character of the business in which the company is engaged and the authorized duties of such agent. [32 C. J., art. 590, p. 1331.]

The statute in question does not in terms restrict its application to a mere soliciting agent as such; but it is broad enough to include a general agent with power to solicit or other agents with limited powers who have the power to solicit or any other person who solicits and procures the application and the issuance of the policy thereon by which, for the particular transaction, he becomes the agent of the company.

The record in this case shows that Peabody, in addition to his ordinary authority as a soliciting agent to deliver a policy issued upon an application procured by him and to collect the first premium thereon, assumed to receive from the insured the premiums thereafter falling due thereon as they matured and fell due and to forward them to the company who received the same and issued its formal receipt therefor from the home office to the insured.

By such course of conduct, the company may be held to have held out Peabody as its agent for such purposes. We will, therefore, consider the statute as it may apply to Peabody as a soliciting agent with power to solicit applications, to procure the issuance of policies thereon, to deliver the same, and to collect the premiums thereon due upon delivery and those thereafter falling due annually as they matured and fell due thereon. Peabody did all of that in this case.

In the absence of proof of further authority, express or implied, it must be assumed that such was all the authority he had.

The statute does not in terms restrict its application to a mere soliciting agent, as such, but is broad enough to include a general agent who has power to solicit or who does solicit or other agents with limited powers who have the power to solicit or any other person who solicits and procures the application and the issuance of a policy thereon, in which transaction he becomes the agent of the company.

The statute's application to Peabody is to him, under the record, as a mere soliciting and collecting agent, a special agent whose powers are limited as defined by his contract and his course of conduct and dealing, recognized, approved, and ratified by his principal.

The statute does not undertake to impose on him any additional authority or power to that which he had as such soliciting agent. It merely applies to him and his acts as an agent acting within the scope of his authority and limited powers and, within such scope and limited powers, to make his acts the acts of his principal. [Mallen v. National Life Ass'n, 168 Mo. App. 503, 153 S. W. 1065.]

The statute was meant to correct an unfair situation existing at the time of its enactment, often taken advanage of by the insurance companies. Too often, policies of insurance were being avoided by the companies by reason of statements found in applications for insurance which were inaccurate and untrue and were known to be so to the agents who solicited and prepared the same at the time that they were prepared, on the ground that such statements were the statements of the insureds, when in fact they were not but were either the statements of the solicitors or statements induced by them, on the theory that the solicitors made up such applications as the agents of the insureds. To remedy such situation, the statute was enacted, making such a soliciting agent the agent of the company in any controversy that arose between the company and the insured as to the acts done by him in soliciting and preparing the application and in the delivery of the policy and the collection of the premiums so that the company would stand chargeable with the knowledge and acts of such agent and responsible for them accordingly— in other words, so as to make the knowledge and acts of the soliciting agent the knowledge and acts of the company and to penalize the company with the legal effect of such, rather than to make such knowledge and acts those of the insured and to penalize the insured on account thereof.

The clear intent of the statute is to make such soliciting agent the agent of the company as to all acts done by him within the actual or apparent scope of his authority and is not to confer on him any power whatever beyond the scope of his authority as fixed by his contract or by his previous course of conduct known to or approved and ratified by his principal. It may have made of him the general

agent or *alter ego* of the company within the scope of his authority as it existed but not beyond it. It did not make of him a general agent with unlimited powers beyond the scope of his fixed authority.

The plaintiff cites the case of Thelan v. Metropolitan Life Insurance Company, 2 Fed. Sup. 404, 1. c. 405, arising in the Federal District Court at Kansas City wherein it is said:

"This Missouri statute has been construed both by the Missouri courts and the Court of Appeals for the Eighth Circuit as making the soliciting and collecting agent a general agent upon whose authority there are no limits, notwithstanding the express provision of the policy. [See Bank Savings Life Insurance Company v. Butler, 38 F. (2d) 972, 974; Madsen v. Prudential Insurance Company of America, 185 S. W. 11686 (St. Louis Court of Appeals).]"

We can not follow that court in holding that the statute in question makes a soliciting agent a general agent on whose authority there is no limit or that it has been so construed by the Missouri courts (Madsen v. Prudential Insurance Company of America (Mo. App.), 185 S. W. 1168), the only Missouri case cited in support of the opinion, does not support it in that regard; and the opinion is in direct conflict with Mallen v. National Life Association, *supra,* by Judge ELLISON of this court.

It follows that the trial court did not err in giving the instruction complained of.

15. It is suggested by the plaintiff that the limitations upon the authority of an agent for the collection of obligations for the payment of money upon notes or other instruments of writing of a commercial or business nature or upon ordinary indebtedness in advance of the due dates thereof do not apply to the agent of an insurance company for the collection of annual premiums upon a policy issued by the company.

It is true that the premium upon an insurance policy is not an indebtedness by the insured to the company but is payable at the option of the insured, who, by such payment, fixes and continues in force the policy. The time for the exercise of such option and for the making of such payment of such premium is fixed by the terms of the policy. The agent has no right to vary the terms of the policy in such respect without being authorized to do so by the company. The same limitations naturally impose themselves upon his right to collect such premiums in advance of the time fixed for their payment as upon the right of collecting agents of commercial or other paper evidencing obligations for the payment of money.

We are unable to concur with the plaintiff in her contention that the defendant is estopped to question the right of Peabody to make collection of the four, annual premiums (for 1933, 1934, 1935, and 1936), in a lump sum in advance. Such contention is based upon the claim that Peabody was the authorized soliciting agent of the

defendant and solicited the application for the policy in question and that he delivered the policy and had collected all premiums annually thereafter falling due for sixteen years and had, in behalf of the defendant, transacted all business with the insured arising with reference to said policy for sixteen years, including agreements for the extension of the time for payment of past due premiums and the acceptance of such in installments—in other words, that, by virtue of his real authority and such implied authority as he had, arising from the course of conduct between the union company and Peabody as its agent, Peabody had the right to collect such premiums in advance of their maturity dates with or without its knowledge and that, by reason of the premises, so far as the collection of the premiums on the policy is concerned, under Section 5733, *supra,* his powers were general and unlimited; and that, in such matter, he could do anything the defendant itself could do.

The plaintiff's contentions under this head have been determined against her by what has been said in disposing of her contentions with relation to the giving by the trial court of an instruction directing a verdict for the defendant. The evidence does not show that the defendant ever held Peabody out as an agent with power and authority to collect annual premiums on the policy in question, or other policies, in advance of their maturity or so broadened his authority as its agent as to give him such authority in such a matter by any course of conduct with reference to him. The record does not show that Peabody had ever, prior to the occasion in question, collected a premium in advance of the date fixed in the policy for its payment. There is nothing in the record upon which to base an estoppel denying to the defendant the right to dispute Peabody's authority in such regard.

16. The plaintiff's final assignments of error relate to alleged error upon the part of the trial court in refusing to sustain a motion for a new trial and in refusing to sustain a motion in arrest of judgment.

The assignments, in each instance, are too general to call for examination by this court upon this appeal. That this is true has been repeatedly held. It is unnecessary to cite authorities.

17. The conclusions reached, as hereinbefore set out, upon the assignments of error and points made by the plaintiff lead to an affirmance of the actions and the judgment of the trial court appealed from. It is unnecessary to consider points presented by the defendant in its brief upon this appeal.

The judgment of the trial court is affirmed. All concur.